CHARLES SANDERS *et al.* Appellees, *vs.* THE MERCHANTS STATE BANK OF CENTRALIA *et al.*—(F. M. SHUPERT *et al.* Appellants.)

*Opinion filed October 22, 1932.*

548

DUNCAN and JONES, JJ., and HEARD, C. J., dissenting.

J. L. McLaughlin, Wilson & Wilson, and W. Gordon Murphey, (Tenney, Harding, Sherman & Rogers, Mayer, Meyer, Austrian & Platt, Winston, Strawn & Shaw, and West & Eckhart, of counsel,) for appellants.

R. J. Branson, and June C. Smith, for appellees.

Charles LeRoy Brown, Lionel A. Mincer, and Karl Edwin Seyfarth, *amici curiæ*.

Scott, MacLeish & Falk, Taylor, Miller, Busch & Boyden, Thomas G. Deering, Thomas V. O'Donnell, Marion B. Stahl, Butler, Pope, Ballard & Elting, and Sonnenschein, Berkson, Lautmann, Levinson & Morse, *amici curiæ* on rehearing.

Mr. Justice Dunn delivered the opinion of the court:

The Merchants State Bank of Centralia was incorporated on May 22, 1900, with a capital stock of $50,000, which was increased on April 21, 1920, to $100,000. The bank ceased to do business on December 8, 1930, as the result of an examination by the Auditor of Public Accounts and his finding that the bank was operated with an insufficient portion of its assets in cash, its cash resources being only $13,915.54 at that time and its liabilities more than $1,000,000. The Auditor appointed a receiver for the bank and filed a bill for the confirmation of the appointment, the dissolution of the bank and the distribution of its assets. The appointment was confirmed by the court on January 19, 1931, and the receiver has proceeded to collect the assets of the bank under the direction of the Auditor. At the January term, 1931, of the circuit court of Marion county a bill in the nature of a creditor's bill was filed in accordance with the provisions of section 11 of the Banking act, against the bank, its stockholders at the time of its suspension and former stockholders who had transferred their stock, by seven creditors of the bank in behalf

of themselves and of all other creditors who might desire to join in the bill. A demurrer to the bill was overruled and an answer and replication were filed. The cause was heard by the chancellor, and on April 24, 1931, a decree was entered against the defendants to the bill. Many of the defendants who were stockholders at the time of the bank's suspension paid the par value of their stock in satisfaction of their liability, or secured payment, and many of those who were not stockholders but once had been, though they had transferred their stock before the bank's suspension, did the same thing. The decree directed the payment within ten days, by certain defendants named, of the respective sums adjudged against them severally, amounting in the aggregate to $56,200, and awarded execution. It also found that a number of the defendants who were stockholders at the time of the bank's suspension, or who had formerly been stockholders, had paid to the receiver who had been appointed on this bill, sums amounting in the aggregate to $55,687.50, being the full amounts for which they were, respectively, liable, and others had satisfactorily secured or made satisfactory arrangements to pay sums amounting in the aggregate to $47,012.50, being the full amounts for which they were, respectively, liable. As to those who had paid, the court decreed that their liabilities to the creditors were discharged and satisfied, and as to those who had secured or satisfactorily arranged for the payment of the amounts claimed from them the decree ordered that the court retain jurisdiction of the cause. Thirteen of the defendants, including Martha Barron, who had never been a stockholder but was sued on account of her deceased husband's liability, have appealed severally and have joined in the assignment of errors on the record. None of the appellants was a stockholder at the time of the bank's suspension, but all except Martha Barron had been stockholders at some time during the operation of the bank and had transferred their stock from two days to eight

or nine years before its suspension. The number of the defendants was ninety-seven.

The questions presented for decision and argued by counsel are: (1) Whether all the successive owners of the same shares of stock can be held liable to the amount of the par value of those shares for debts accruing during the respective periods of ownership of such successive owners. (2) What is the period of limitation, if any, under the statute, to a suit to recover on the stockholder's liability? (3) Can the heir, legatee or distributee of a stockholder who has died and whose estate has been administered upon and distributed be held liable to creditors of the bank because of the stockholder's liability?

The first of these questions is answered by the case of *Golden v. Cervenka,* 278 Ill. 409, in which it was held that the language of the constitution was intended to impose upon shareholders in banks, in addition to their investment in the stock, (which is, of course, liable to the creditors of a bank,) a further personal responsibility to the creditors to the extent of the par value of their stock. It was further held that the constitutional liability of a stockholder to the bank's creditors is for all its liabilities accruing while he or she remains such stockholder to the extent of his stock. The constitution of 1848 (art. 10, sec. 4,) provided that "the stockholders in every corporation, or joint stock association for banking purposes, issuing bank notes, or any kind of paper credits to circulate as money, shall be individually responsible, to the amount of their respective share or shares of stock in any such corporation or association, for all its debts or liabilities of every kind," and the provisions of special charters which were granted to banks before the constitution of 1870 usually contained like provisions declaring the stockholder liable for all the debts of the bank. These provisions before the constitution of 1870 made the stockholders liable not only for all the bills of the bank but for all its debts and liabilities of every

kind to the amount of their respective shares of stock, without any other limitation. Section 6 of article 11 of the constitution of 1870 provides that "every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors, over and above the amount of stock by him or her held, to an amount equal to his or her respective shares so held, for all its liabilities accruing while he or she remains such stockholder."

While these provisions of the two constitutions are couched in slightly different language there is no substantial difference in meaning, except that the provision of the constitution of 1848 is limited to banks of issue while that of the constitution of 1870 extends to all banks, whether of issue, deposit or discount, and except, also, that the liability imposed by the former constitution is for all the debts and liabilities of the bank of every kind, while the liability imposed by the present constitution is only for all the liabilities accruing while the stockholder remains a stockholder. Under the constitution of 1848 the stockholders of a bank at any particular time were individually responsible to the amount of their respective shares for all the debts or liabilities of the bank of every kind, and not for such debts or liabilities, only, as accrued during their ownership of their respective shares. This liability was a charge or lien on each share of stock to the amount of its par value, which followed the share into the hands of each successive holder. By the transfer of his stock the owner ceased to be a stockholder and the purchaser became a stockholder in his stead and assumed the vendor's liability, because of his ownership of the stock, for all the debts of the bank to the extent of his stock. In various charters granted to corporations by special acts of the legislature the liability imposed by the constitution was extended for three months, or sometimes for a greater period, after the transfer of the stock, and in such cases both the seller of the stock and the purchaser were liable for the period after

the transfer provided in the charter of the bank. The creditor might sue either the vendor or the vendee of the stock, but if the vendor paid the debt it was held that he could compel the vendee to reimburse him by reason of his assumption of the stockholder's liability. This was the law under the constitution of 1848. The transfer of shares of stock had the effect of terminating the liability of the vendor at the expiration of three months and imposing the same liability on the vendee from the date of the transfer.

*Buchanan* v. *Meisser,* 105 Ill. 638, and *Thompson* v. *Meisser,* 108 id. 359, were two actions of debt, each brought by a creditor of the People's Bank of Belleville who was a depositor, against a single stockholder of the bank. The bank's charter provided that "whenever default shall be made in the payment of any debt or liability contracted by such corporation, the stockholders shall be held individually responsible for an amount equal to the amount of the stock held by them, respectively, and such liability shall continue until three months after an assignment of the stock and publication of a notice thereof in a newspaper," etc. In these cases it was held that upon proof that the bank was indebted to the plaintiff in various amounts for money deposited, that when these debts were contracted the defendant was a stockholder in the bank, and that the bank was insolvent, the plaintiff was entitled to judgment for the amount of his deposits, not exceeding the amount of the defendant's stock.

These two cases were followed by that of *Thebus* v. *Smiley,* 110 Ill. 316, another action by a depositor against a stockholder in the same People's Bank of Belleville. This case, like the other two, sustained the action and affirmed the judgment against the stockholder, and also decided two other questions which arose in the later case, viz., that the creditor first suing, who is guilty of no *laches* in prosecuting his suit, was entitled to priority over a creditor suing subsequently but who obtains judgment first, and that in case

of successive sales and transfers of the same stock a judgment against the first holder for the full amount of the stock and its payment, precludes any further liability on that stock. The first of these two questions is decided upon the doctrine that the creditor of a corporation first suing a stockholder in respect of his individual liability, acquires by the bringing of suit a preference over other creditors which neither they nor the stockholders can defeat, unless, possibly, by bringing a general winding-up bill. Such a suit may be said to be an equitable attachment of the stockholder's liability to the extent of the plaintiff creditor's claim, and the stockholder cannot, after notice of such a suit, defeat the suing creditor by paying the claims of other creditors so far as to exhaust his liability. The other of the two questions was decided on the ground that there could be but one amount for which there was liability on account of the same share of stock when that liability equals or exceeds the amount of the share. While both the assignor and the assignee may be liable, the assignor because the debt was incurred by the corporation within three months after the date of the assignment and the assignee because it was incurred while he was the owner of the stock, there can be but one satisfaction. Where the assignor is held liable on such stock after he has sold and transferred it to another, he is entitled to recover the amount from the holder into whosesoever hands it may have passed, on the ground that each successive holder stands in the assignor's shoes as respects the stock and the liabilities growing out of it. It is said in the *Thebus case* that the cases holding this rule proceed on the hypothesis that the stock has attached to it a liability, equal in amount, on account of debts incurred by the corporation, to be discharged by the person who is, at the time such debts are incurred and for three months afterward, its legal holder, and not upon that of the successive personal liability of each holder of the stock for debts contracted while he is holder. Of course, the

liability under the terms of this charter was different from that imposed by section 6 of article 11 of the constitution of 1870, which is the individual and personal liability, to the extent of his stock, of every stockholder for all the liabilities of the bank while he remains a stockholder and in respect to which section 6 of the Banking act provides no transfer of stock shall operate as a release.

*Root* v. *Sinnock,* 120 Ill. 350, was an action of assumpsit by a creditor of the Union Bank of Quincy, who was a depositor in the bank, against a stockholder. The charter of the bank provided that "the stockholders in this corporation shall be individually liable to the amount of their stock for all debts of the corporation, and such liability shall continue for three months after the transfer of any stock on the books of the corporation." In that case it was said that the liability is because of being a stockholder—that is, because of the ownership of stock—and that it was not necessary that it affirmatively appear that the defendant was a stockholder when the cause of action accrued but it was sufficient that he was a stockholder when suit was brought. In the opinion the case of *Brown* v. *Hitchcock,* 36 Ohio St. 681, was cited and the following quotation from the opinion was approved: "The expression, 'all stockholders,' must be regarded, in the absence of any legislative indication to the contrary, as including not only those who were such at the time the indebtedness was incurred, but all those who successively stand in their shoes in respect to the same stock." The opinion in the Illinois case then continued: "The liability being because of the ownership of stock, it follows the stock into whosesoever hands it may go, and whoever purchases it does so at the risk of this liability, and in consonance with this view we have held that the liability once discharged, the stock is thereafter free of any further liability on account of ownership.—*Thebus* v. *Smiley,* 110 Ill. 316."

The effect of a transfer of stock under the constitution of 1870 is different. The debts of the bank are no charge

or lien upon shares of stock which are transferred. The vendor is liable to the amount of his shares for the debts of the bank accrued during his ownership of the stock up to the time of their transfer, but the transfer gives the purchaser the shares free of the debts of the corporation. His liability for the bank's debts begins with his acquisition of the stock by the transfer and attaches only in favor of debts accruing after the transfer to him and during his ownership of the stock. The meaning of the constitutional provision is that the persons who were stockholders of the bank at the time credit was extended to it or a liability was incurred by it should be individually and personally liable to the creditors to an amount equal to their stock and no more. These conclusions were all announced in *Golden* v. *Cervenka, supra.*

The transfer of stock which under the constitution of 1848 released the vendor's liability has no such effect under the constitution of 1870. The constitutional provision is, that every stockholder shall be responsible to an amount equal to his shares, for all the liabilities accruing while he remains a stockholder. The holder of the first certificate of stock issued is responsible for all the debts of the bank to the extent of the stock represented by that certificate until he transfers it. He remains liable after the transfer to the same extent as before, but not for any debt subsequently accruing. His liability does not attach to the stock transferred but remains his personal obligation, and his vendee becomes liable only for such debts as accrue during his ownership of the stock. So it is with each successive holder. Each is liable, by the express language of the constitution, to an amount equal to his shares for all the liabilities of the bank accruing during his ownership and no more. If the owner of one share of stock has been such owner since the organization of the bank until its failure twenty years later, his liability for its debts is limited to $100. If he is the owner of another share which was trans-

ferred to him within a week of the bank's failure, his liability on account of this share is also limited to $100. This share may, however, have been transferred a dozen times, and while the liability of each one of the other eleven owners of the share is limited to $100, the several liabilities on the one share may aggregate $1200. The constitution suggests no method of terminating the successive personal liability of each holder to the amount of his stock except the payment of the debts for which he is bound, unless there is some statute of limitations applicable to the case. It necessarily follows that the doctrine of *Thebus* v. *Smiley, supra,* that the payment by any of the successive holders of the par value of a single share of stock releases the whole liability on that share of stock has no application to banks organized under the constitution of 1870. A liability of each stockholder for such debts, only, as accrued during his ownership of his stock, as under the constitution of 1870, is inconsistent with a liability which holds him, as under the constitution of 1848, for all debts existing at the time of the transfer to him of his stock and releases him from all liability on his transfer of the stock and imposes the liability on his transferee. The constitutional provision of the constitution of 1870 in regard to the liabilities of stockholders in banking institutions is a self-executing provision and needs no legislation to enforce it. Being a part of the organic law it requires no popular election to make its effect more binding. No banking act can go into operation in this State of which the constitutional provision in question shall not be a part. By virtue of the inherent power of the constitution itself such provision is grafted into every banking law which is passed by the legislature or submitted to the votes of the people. *Dupee* v. *Swigert,* 127 Ill. 494; *City of East St. Louis* v. *People,* 124 id. 655; *City of East St. Louis* v. *Amy,* 120 U. S. 600.

Under the constitution the stockholder is responsible to the amount of his stock for all the liabilities of the bank

incurred during his ownership of stock and no more, and such responsibility continues until the liability is paid or otherwise discharged. Stockholders of a bank at the time credit was extended to it or a liability was incurred by it are individually and personally liable to the creditors to an amount equal to their stock. That liability is to be determined in accordance with the rule announced in the case of *People* v. *Tallmadge,* 328 Ill. 210, following *Clayton's case,* 1 Meriv. 572, that in the case of a banking account the appropriation of money deposited and paid out must be in the order in which the receipts and payments take place and are carried into the account. Presumably it is the sum first paid in that is first drawn out; the first item on the debit side that is discharged by the first item on the credit side. Cases have been cited to us in which the courts of other States have arrived at conclusions at variance in some respects with those which we have announced. Those decisions have been reached upon a consideration of the respective constitutions of those States whose language is usually not the same as ours, and sometimes upon a different construction given the same language. For instance, the Supreme Court of the State of Washington held the word "accruing," in the phrase "accruing while they remain such stockholders," to mean "which have accrued," and the whole phrase to mean which have accrued while they remain such stockholders, and that the debt accrues only on its maturity. "Contracts, debts and engagements," the court says, "then accrue, not when the bank receives a deposit, for instance, but when the depositor makes a demand for the payment of his deposit, or when the bank becomes insolvent and the deposit by operation of law then becomes due and payable. The contracts, debts and engagements of a solvent bank have therefore accrued when the bank goes into liquidation, and the persons owning stock at that time are the ones who are liable for the constitutional super-added liability to meet those contracts, debts and engage-

ments. * * * The conclusion, therefore, is, that upon the failure of a State bank the then real holders of stock in that institution are liable, up to an amount equal to the par value of their stock, for all contracts, debts and engagements of the bank which become due upon its failure; that this obligation is a secondary one, enforceable by the State banking authorities." *Duke* v. *Johnson,* 211 Pac. (Wash.) 710.

The three principles involved in the last sentence just quoted are the precise opposite of the conclusions announced by our decisions, in many cases extending over a long period of years, and we are not convinced by the reasoning of this case or the other cases which have been cited that our previous decisions have been wrong or should be overruled. On the contrary, we are convinced that the construction of our constitution in our previous decisions has been correct and we adhere to the principles heretofore announced.

In an important particular, very materially affecting the responsibility of stockholders in banking corporations, our constitution differs from the constitution of the State of Washington construed in *Duke* v. *Johnson, supra.* The section of the constitution construed in that case was section 11 of article 12 and reads as follows: "Each stockholder of any banking or insurance corporation or joint stock association shall be individually and personally liable equally and ratably, and not one for another, for all contracts, debts, and engagements of such corporation or association accruing while they remain such stockholders, to the extent of the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares." Other States have similar provisions for an equal and ratable liability and not one for another, but there is no such provision in our constitution.

In regard to the application of the Statute of Limitations, the appellees contend that no question of the Statute of Limitations arises on the record, because, while the debt

of the bank to its creditor and the liability of the stockholder accrue at the same time—that is, at the time the indebtedness is incurred by the bank—yet no cause of action accrues against either the bank or the stockholder until the debt or liability becomes due; that the cause of action accrues against both at the same time, and that time is when the bank becomes insolvent, suspends payment, closes its doors and quits business. On the other hand, it is argued on behalf of the appellants that the bank's liabilities in large part are barred by the Statute of Limitations; that the argument of the appellees applies only to deposits payable on demand and subject to check and not to liabilities evidenced by promissory notes executed or indorsed by the bank, drafts accepted or indorsed by the bank, certificates of deposit payable at fixed dates, breaches of contracts, or covenants in deeds or leases, torts, deceit, misrepresentation or fraud, or other forms of obligation or liability upon which no demand is necessary before the bringing of suit. Upon such liabilities the cause of action accrues against the bank upon the breach of its contract, the commission of the tort or fraud or the making of the misrepresentation, and an action may be begun at once against the bank for such breach, and against the stockholder at the same time upon his constitutional liability.

The appellants and the appellees agree that the only questions raised upon the record are correctly stated in the appellants' brief, and those questions have been heretofore stated in this opinion. The transcript of the record filed is a *præcipe* transcript, which contains only the amended bill, a stipulation of facts between the appellants and the appellees, and the decree appealed from. It was stipulated that all questions involved in the litigation which may be raised upon this record have been duly raised and preserved by appropriate pleas, answers, replications and exceptions, and that any and all questions which may be raised upon the record have been properly raised and preserved, includ-

ing any and all statutes of limitations. Such questions as arise upon the decree and the chancellor's findings of fact upon which the decree is based are open to consideration. The decree finds all the facts stated in the first paragraph of this opinion, that the total liabilities of the bank to its creditors, whose number is 9674 unpaid and unsatisfied, are $740,000, which have been proved, that the several items of such liabilities are correctly set forth in a report attached to the decree and made a part of it, and that the items of such indebtedness of the bank to its creditors during each period of the ownership of stock as set forth in the report exceeds the sum of $100 a share of stock owned by the several defendants during such several periods. The decree then sets forth in paragraph 10 a list of persons named who are parties defendant sued as stockholders, and finds that each of such defendants, respectively, held the number of shares of stock during the respective periods of time and was liable to the creditors of the bank to the extent severally mentioned, all as stated in 245 numbered sub-paragraphs of paragraph 10 of the decree. Each of these sub-paragraphs of paragraph 10, so far as it affects the appellants, except Martha Barron, concerns the shares of stock represented by a single certificate owned by one of the appellants from a certain date to another certain date and finds the amount of the claims of creditors which accrued between those two dates. Each sub-paragraph then states the conclusion that the particular stockholder mentioned in the sub-paragraph is liable for $100 for each of the shares of stock covered by the particular certificate mentioned.

The proceedings in the cause and the judgment are before us on this record and the assignments of error which have been made and argued in the written briefs. The errors assigned are eight in number, but all are substantially included in the following three: (1) Overruling the demurrer to the amended bill; (2) holding against the appellants upon their pleas of the Statute of Limitations;

(3) entering the decree without any sufficient evidence on which to base it and contrary to the law and the evidence. The first of these alleged errors was waived by pleading over, and it is not argued. The second has been argued on each side by counsel for the parties and also in the briefs of the *amici curiæ* which they were permitted to file. An examination of the abstract, and of the transcript itself, does not disclose the contents of the answer or of any plea, or, indeed, that any plea was filed, though there is a recital in the decree that the appellants withdrew their answers and filed a demurrer, which was overruled, and that they then re-filed their answer to the amended bill and evidence was taken in open court, followed by the findings of the court and its decree. In this condition of the record it is impossible to determine the sufficiency of any plea·or pleas whose contents are not before us but are left wholly to the imagination, uncontrolled except by the stipulation which has been mentioned in regard to the questions raised on the record, including "any and all statutes of limitation."

The questions argued in regard to the Statute of Limitations are, whether the five-year or the ten-year Statute of Limitations applies in favor of the stockholder, and, When does a cause of action accrue in favor of the creditor? An answer to these questions would require a division of each, dependent upon the character of the creditors' claims. The decree makes no distinction in this respect among the creditors. Every finding of the court is a general finding of the total liabilities of the bank to all its creditors, without any distinction. The total amount of all the bank's liabilities at the date of the decree was found to be $740,000. It cannot be assumed that this amount was all due to depositors, and, even if this could be assumed, it cannot be assumed that all these deposits were subject to check. Usually a bank has savings deposits, which are subject to a certain number of days' notice before payment may be demanded. Certificates of deposit are also issued, sometimes

payable on demand, sometimes on fixed dates. Besides liabilities to its depositors, banks become liable on their own promissory notes for money borrowed, on bills re-discounted upon the bank's indorsement, on cashier's checks, for rent, the salaries of its officers, and other current expenses and other forms of liability, besides its liability to its depositors. Among the liabilities of this bank may be claims of the character of each of the forms of liability which have been mentioned and of other forms, and to some of them the five-year Statute of Limitations may be appropriate and to others the ten-year statute, and the Statute of Limitations may begin to run against some at a different date from others. A plea of the Statute of Limitations must apply to a particular claim or class of claims. Each stockholder or class of stockholders may file pleas of the statute against any creditor or class of creditors who may be subject to its operation. It is manifest that there are probably many creditors against whose claims no plea of any statute of limitations could be truthfully made. It is equally probable that against some of the claims a statute of limitations may properly be pleaded and sustained. Under the stipulation that all questions involved in the litigation which may be raised upon the record have been duly raised by appropriate pleas, we may not decide upon the validity of those pleas which we have not seen and cannot see. Neither the character of any item of indebtedness found to have accrued during any one of these periods, nor the particular date when it accrued or when it became due, can be ascertained from this record. The decree finds only that each debt accrued between the two dates of the purchase of stock and its sale. The date when any item became due, if it became due at any time before the bank's suspension, cannot be ascertained unless it is held that the debt being due from the bank on demand became due at the time the liability arose. This cannot be true of the deposits. The contract of the bank with each depositor is to pay the money de-

posited on demand made at its banking house, in such sums, at such times and to such persons as the depositor may direct. (*Brahm* v. *Adkins,* 77 Ill. 263; *Planters Bank* v. *Farmers and Merchants' Bank,* 8 Gill & J. 449; *Watson* v. *Phœnix Bank,* 8 Metc. (Mass.) 217; *Girard Bank* v. *Bank of Penn Township,* 39 Pa. St. 92; *Elliott* v. *Capital City State Bank,* 128 Iowa, 275; *Koelzer* v. *First Nat. Bank,* 125 Wis. 599.) Until demand the depositor can maintain no action against the bank and therefore has no cause of action. The stockholder is liable to the same extent as the bank—that is, to pay upon demand made of the bank in such sums, at such times and to such persons as the depositor may direct. He can be held on no other terms and no action can be maintained against him until demand made on the bank. The stockholder is under no stricter liability than the bank, but under the constitution his liability is identical with the liability of the bank during the time he remains a stockholder and not something different. The Statute of Limitations is an affirmative defense, and the burden of proving it rests upon the party pleading it. (*Schell* v. *Weaver,* 225 Ill. 159.) Where part of the plaintiff's demand is barred and part is not, the defendant is required to prove the part which falls specifically within the protection of the statute. (*Buck* v. *Newberry,* 55 W. Va. 681.) Since no distinct, individual item of liability or class of items is pointed out in the argument as having accrued during the ownership of any particular shares of stock and no date for the beginning of the running of the Statute of Limitations for any particular debt or class of debts, there is no basis for holding that any statute of limitations applies to any debt included in the decree, and the questions of limitation of actions which have been argued are mere moot questions which do not constitute a basis of adjudication in this case.

The case of Martha Barron is different from that of any other appellant. It is not based on her liability as a

stockholder, for she was never the owner of any stock in the bank. Her husband, Robert Barron, was the owner of twenty shares from the time the bank was organized, in May, 1900, and became the owner of twenty additional shares on February 19, 1914. He continued to own the forty shares until January 28, 1925, when he transferred them, nearly six years before the bank failed. About two and a half years later, on September 3, 1927, he died, leaving a will, by which he gave all his property to Martha, his widow, and she received under the will personal property of the value of $5500 and real estate of the value of $11,000. His will was admitted to probate and record on October 5, 1927, and the estate was finally settled and the executrix discharged on October 23, 1928, over two years before the failure of the bank. The theory on which the decree against Mrs. Barron was predicated is, that in addition to his investment in the stock of the bank, which, of course, was liable for all the bank's debts, her husband was personally and individually liable, to the extent of his stock, for every debt of the bank which accrued during the time he owned the stock, that this liability was in no way affected by the transfer of his stock, but continued, to the extent mentioned, until every debt which had so accrued was paid, and that upon his death leaving any such debt unpaid it further continued to be a liability against his estate to the amount of the stock he owned. Assuming all this to be true, any depositor of the bank during his ownership of the stock having made a demand of payment might have sued him for the amount of his deposit under the constitutional imposition of liability on him, and any other creditor whose claim accrued during his ownership of the stock, and was due, might have sued him without any demand. So if, after Barron's death, a creditor of the bank had exhibited a claim against his estate within one year after the date of the letters testamentary issued to his executrix there would have been no valid defense to

the extent of Barron's stock. However, the sixth clause of section 70 of the Administration act provides that all demands not exhibited to the court within one year from the granting of administration shall be forever barred unless the creditors shall find other estate of the deceased not inventoried or accounted for by the executor or administrator, in which case their claims shall be paid *pro rata* out of such subsequently discovered estate. This provision creating a limitation upon the time for filing claims against an estate is not a general statute of limitations. The purpose of the act in regard to the administration of estates was to facilitate their early settlement, and the limitation for the exhibition of claims to two years (a time afterward reduced to one year) had that particular purpose in view. A claim not exhibited within the time fixed is not absolutely barred but its right to participate in the distribution of the assets of the estate actually inventoried or accounted for is lost. (*Waughop* v. *Bartlett,* 165 Ill. 124; *Gross* v. *Estate of Thornton,* 286 id. 185; *Durflinger* v. *Arnold,* 329 id. 93.) The rule is applied in equity as well as at law, and while a mortgagor may foreclose his mortgage in equity after two years without presenting to the administrator or the court the note or other obligation secured by it, he cannot have a deficiency decree for participation in the assets of the estate which have been inventoried or accounted for. (*Mulvey* v. *Johnson,* 90 Ill. 457; *Kittredge* v. *Nicholes,* 162 id. 410; *Waughop* v. *Bartlett, supra.*) Therefore, if the creditors of the bank had such a claim against Barron as could have been presented and allowed against his estate, the failure to present it within the time fixed by the statute is a bar to a recovery by any other proceeding. It was held in *Ryan* v. *Jones,* 16 Ill. 1, that the personal estate of a decedent is primarily liable for the payment of his debts and must be exhausted before resort can be had to the real estate. "Demands against the estate of a deceased person must be exhibited within two

years from the grant of administration. A creditor free from disability who fails to present his claim within that time is not allowed to participate in the proceeds of the personal estate previously inventoried or accounted for by the executor or administrator. He must satisfy his debt out of property subsequently discovered or inventoried."

The defense as to the claim against Mrs. Barron rests entirely upon section 70 of the Administration act and the failure to exhibit the claim against the estate of her husband within a year from the date of the issue of letters testamentary. The appellees' answer to this defense is that the creditors were unable to exhibit their claims during the administration of the estate because during the whole time of one year after the issue of letters testamentary they were mere contingent liabilities and not obligations of the estate, and therefore could not be allowed or considered in the settlement of the estate. In *Union Trust Co.* v. *Shoemaker,* 258 Ill. 564, and in *Chicago Title and Trust Co.* v. *Fine Arts Building,* 288 id. 142, it was held that the limitation of section 70 did not apply to actions against heirs, devisees or legatees to subject property of the estate received by them to the payment of contingent liabilities of the estate. The claim which was held in the first of these cases to be a mere contingent liability and not a fixed obligation of the estate was upon a replevin bond executed by Walter Shoemaker, a partner in the firm which was plaintiff in the replevin suit, to the sheriff having the writ with the conditions usual in such bonds. The property was taken by the sheriff by virtue of the writ and delivered to the plaintiffs. Fifteen years later the case was tried and resulted in a judgment in accordance with the law of Michigan, where the case was pending, for $39,341.45. In the meantime, Shoemaker, who lived in Chicago, died testate in 1900, his will was admitted to probate and letters testamentary were issued, his executor and executrix settled his estate, filed their final account and were discharged September 28, 1904,

and the estate was distributed. A little over two years later a bill in equity was filed against the executor and executrix of the will, who were the residuary devisees and had each received more than enough of the assets of the estate to pay the amount sought to be recovered. Shoemaker having died before judgment, of course no judgment was or could be rendered in the replevin suit against him or his estate. There was no breach of the bond until judgment was rendered, and before that occurred the liability was entirely contingent. There was a potential liability on the bond but no actual liability until the breach by failing to prosecute the suit with effect. Until that time there was no liability, present or future, to pay, and, of course, none for which any claim could be exhibited or prosecuted. The liability was dependent on an event which neither party could control and was therefore contingent. In the other of the cases cited the claim was for installments of rent upon a lease to the deceased for a term of ten years at a rent of $2166.67 a month. The lease was assigned with the consent of the lessor, the assignee assuming the liability of the lessee. The assignee died in the fifth year of the term and the lessor exhibited against his estate a claim for the installments of rent for the remainder of the term, but it was held that the claim was contingent because there were contained in the lease contingencies, the happening of which was not within the control of either party, which might defeat all right to recover rents; as, for instance, a provision that in case of such damage by fire as to render the building untenantable a failure to repair in thirty days should entitle the lessee as well as the lessor to terminate the lease, or a provision that in case the lessor desires to re-build the buildings he may terminate the lease. In both these cases the claim was contingent because it was entirely uncertain whether there would ever be any liability.

It is said that a creditor of the bank was prevented from exhibiting his claim against the estate of Robert Bar-

ron because it was not due until demand of payment was made of the bank and refused. The creditor was not so prevented from exhibiting his claim. He could have demanded payment of the bank at any time and payment would either have been made or refused. It was his own *laches* which prevented his obtaining the allowance of his claim against Barron's estate. There was no obstacle, except his own will, in the way of his making a demand on the bank. He chose not to exhibit his claim or make demand for its payment. If it was necessary for him to make a demand and he failed to make it, the absence of a demand might be a defense to his claim; but he could not allege his refusal to make a demand during the whole period of a year from the date of the letters testamentary to bar the defense of section 70 of the Administration act, by showing that he was prevented from exhibiting his claim by reason of the fact that it was contingent and that he had refused to remove the contingency by making a demand of the bank. It would be most inequitable to permit creditors who could with a breath remove the supposed obstacle to the prosecution of their claims, to remain inactive, to refuse even to demand payment of the bank, and by their neglect to pass on a liability to future generations.

The reason suggested for the inability of a creditor to have his claim allowed against Barron's estate is the contingent character of the claim. The liability must be conceded to be absolute, but the argument that the claim is contingent is that it is not due and no°action at law could be maintained upon it until demand made on the bank. The rule which governs in the application of section 70, as indicated in *Dugger* v. *Oglesby,* 99 Ill. 405, *Union Trust Co.* v. *Shoemaker, supra, Chicago Title and Trust Co.* v. *Fine Arts Building, supra,* and *Beebe* v. *Kirkpatrick,* 321 Ill. 612, is, that the claim will be barred from participation in the distribution of the estate if it could have been exhibited to the court and allowed against the administrator. The

law having given a remedy in such case it must be pursued. The contingency which will prevent the allowance of the claim must be one the happening of which is not within the control of either party. In *Hall* v. *Bumstead,* 20 Pick. 2, a case arising under a statute of non-claim within a period of four years, instead of one year as in our statute, no claim was made against the estate of Bumstead as surety on a guardian's bond, but afterward a proceeding was brought against his heirs to compel them to pay the amount due from the deceased guardian. In the opinion by Chief Justice Shaw it was said: "If the demand might have been made, and thereupon an action could have accrued, before the expiration of the four years, then it might have been brought against the administrator and will not lie against the heir." In *West* v. *Topeka Savings Bank,* 66 Kan. 524, it was held: "It is established law in this State that when some preliminary action is an essential prerequisite to the bringing of a suit and such action rests with the claimant, he cannot defeat the operation of the Statute of Limitations by long and unnecessary delay in 'taking the antecedent step, and the statute will begin to run within a reasonable time after the party would by his own act perfect his right. * * * This doctrine has been stated and re-stated, illustrated and illuminated, applied and re-applied, until it has become a truism." So it was held that where preliminary steps are essential to the bringing of an action upon a claim and such steps may be taken by the claimant, he cannot prevent the operation of the statute by unnecessary delay in taking such action, and that if he fails to act within reasonable time the statutory limitation will run. (*Atchison, Topeka and Santa Fe Railroad Co.* v. *Burlingame Township,* 36 Kan. 628.) In *Bauserman* v. *Blunt,* 147 U. S. 647, it is said the rule is well settled that the bar of the Statute of Limitations cannot be postponed by the failure of the creditor to avail himself of any means within his power to prosecute or to preserve his claim.

The connection of Barron with the bank as a stockholder had been terminated by the transfer of his stock and his estate had been fully settled more than two years before the amendment of section 11 of the Banking act, approved and in force by the vote of the people in November, 1930, which provided for the enforcement of the liability of the stockholders of any banking association organized under that act which shall have gone into liquidation under section 11, by a bill in equity brought by any creditor of the association on behalf of himself and all other creditors of the association against the stockholders. It is unnecessary to consider the effect of this amendment, since it does not affect Mrs. Barron's liability. Its validity as a whole or in any part is not questioned by any assignment of error or argued by any of the parties. Nor is any act or ruling of the court complained of because in accordance with or contrary to its provisions.

The decree against Martha Barron is reversed and as to all the other appellants the decree is affirmed.

*Affirmed in part and reversed in part.*

DUNCAN and JONES, JJ., and HEARD, C. J., dissenting:

We concur in the holdings of the majority of the court that the appellants, the twelve stockholders aforesaid, are all liable, under the evidence in this record, to an amount equal to the par value of their stock, the amounts adjudged against them by the court. We also concur in the decision of the court that every stockholder of the bank, including all the stockholders who are purchasers of stock from other holders of stock, became and are liable, under the provisions of the constitution, for all liabilities of the bank that accrued during the time they were holders of such stock, and that such liability continued, and will continue, until the same is fully discharged. We do not, however, concur with many of the reasons upon which the decision is based. The provisions of the constitution of 1870 under which the

stockholders' liability was imposed are in the following language: "Every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors, over and above the amount of stock by him or her held, to an amount equal to his or her respective shares so held, for all its liabilities accruing while he or she remains such stockholder." The liability or obligation of the stockholder imposed by said provisions of the constitution is not an absolute liability or obligation imposed upon such stockholder, in the sense that it can be invoked or enforced by the creditors or obligees of the bank upon demand made upon the stockholder by such creditor or obligee when the bank is a going concern and is paying all its debts or liabilities promptly when they become due. We hold the liability of a stockholder becomes an absolute liability to the creditors of the bank when the bank refuses or neglects to pay its liability or obligation at the time and place where it is obligated to do so, or has suspended business, and is unable to pay its liability and obligations by reason of its insolvency or for any other reason. We think the majority of the court have virtually conceded that the obligation of the stockholder to the creditors and obligees of the bank are as we have indicated, and that they are not the same in character and cannot be enforced at any time until the bank has failed to discharge its obligation to such creditors or obligees. It is stated in the decision of the court that no action can be maintained against the stockholder until demand has been made upon the bank for payment. We all agree, however, that the liability of all the stockholders in this case became absolute to the creditors and obligees of the bank on December 8, 1930, because of the fact that on that date the bank suspended business and closed its doors. We dissent from the holding of the court that the other appellant, Mrs. Barron, is not liable in any sum to the creditors or obligees of the bank and that the judgment of the lower court should be reversed for that reason. We

hold that at the time of the death of her husband the creditors and obligees of the bank had no claim against the deceased's estate which they were required to present to the county court within one year after administration was begun upon his estate. We further hold that such creditors and obligees were guilty of no negligence in failing to file their claims in the probate court against said estate, and that if they had done so the administrator could have successfully resisted the allowance of said claims on the ground that the liability of the stockholders was a contingent liability. Such claims· were contingent liabilities because at no time during the year in which the estate was administered and its assets distributed could it be definitely known or determined that such claims could create or impose an absolute liability on the stockholders. The record shows the bank was a going concern, and it was paying all of its liabilities and obligations during the entire period in which the Barron estate was administered. No one could then safely foretell that the bank would not continue indefinitely as a solvent going concern and until all of the liabilities of the bank or obligations existing at that time were fully and completely paid.

Martha Barron was never the owner of stock in the bank, but her liability, as found by the decree, is predicated upon the following facts: Robert Barron was the owner of twenty shares of stock of the bank from the date of its first organization in May, 1900, to January 28, 1925, and was the owner of another twenty shares of the stock from February 19, 1914, to January 28, 1925. The liabilities of the bank accruing while Barron was such stockholder and unpaid at the time the bank closed was shown by the record to be $30,341.04. Barron died September 3, 1927, leaving a will, by which he bequeathed and devised all of his property, both real and personal, to Martha Barron, his widow. He left personal property valued at $5500 and real estate valued at $11,000. The will was admitted to

probate on October 5, 1927, and an executrix was appointed who duly administered upon the estate. The administration of the estate was closed, the property of the estate was delivered to Martha Barron, and the executrix was discharged on October 23, 1928.

Whether the decree against Martha Barron is correct depends upon whether or not the creditors of the bank had a claim against the estate of Robert Barron that might have been presented and allowed during the administration of that estate. When a claim against a deceased person remains contingent during the whole period allowed by law for presenting claims against an estate and does not ripen into an absolute liability until the estate has been distributed to the heirs or legatees and devisees, the claimant, after an absolute liability has arisen, may by bill in equity against the heirs or legatees and devisees reach the property of the estate received by them. (*Union Trust Co.* v. *Shoemaker,* 258 Ill. 564; *Chicago Title and Trust Co.* v. *Fine Arts Building,* 288 id. 142.) It was held by this court in the case against Shoemaker, that section 67 of the Administration act, which provides that a claim not due may be presented and allowed with a proper rebate of interest, has reference only to claims upon which there is an absolute liability although time of payment is postponed, and does not refer to claims dependent upon a contingency which may or may not ripen into a liability. It is stated as the law that if a claim against a deceased person remains contingent for the whole period fixed by the statute for presenting claims against his estate, the claimant cannot afterwards participate in the distribution of assets by the personal representative unless he finds estate of the deceased not inventoried or accounted for. Such a claimant may, however, maintain a bill in equity against such legatees to reach the property of the estate received by them. Similar holdings were made by this court in *Chicago Title and Trust Co.* v. *Fine Arts Building, supra.* Under the holdings in

these cases no claims of the creditors or obligees of the bank could have been allowed against the estate of Robert Barron, but a bill in equity can be maintained against Mrs. Barron to reach the property of the estate received by her under the provisions of his will.

In no case in this State, so far as we have been able to find, has it ever been decided that the liability of a stockholder in a bank is not a contingent liability so long as the bank is open, doing business, meeting its obligations and paying its depositors on demand or on their order when such demand or order is required. The stockholder's liability under the constitution is for the bank's liability. In *Home Ins. Co.* v. *Peoria and Pekin Union Railway Co.* 178 Ill. 64, this court, in defining the meaning of the word "liable" as used in a policy of insurance, said: "The contention the word 'liable' * * * means an absolute legal and fixed liability is not tenable. * * * The word as used in the policy does not signify a perfected or fixed legal liability but rather a condition out of which a legal liability may arise. The word as most frequently used does not necessarily exclude the idea of a contingency." In *Stone* v. *Clarke's Admrs.* 40 Ill. 411, and *Union Trust Co.* v. *Shoemaker, supra,* the liability on a bond was held to be a contingent liability until there was a breach of the condition of the bond; and in *Mackin* v. *Haven,* 187 Ill. 480, and *Chicago Title and Trust Co.* v. *Fine Arts Building, supra,* liability of a lessee for rentals to be paid in the future was held to be a contingent liability, because the lease, on the happening of certain events, might be terminated before such rentals became due and payable. In *Mortimer* v. *Potter,* 213 Ill. 178, it was held that there was no absolute liability on stock in a national bank on which a claim could be allowed against the estate of a deceased stockholder until failure of the bank, and in that case a bill in equity was held properly filed to subject assets of the estate of a deceased stockholder to liability on

the stock where the bank failure occurred twenty years after the expiration of the time for filing claims against the estate. Decisions to the same effect were made in *Dent v. Matteson,* 70 Minn. 519, 73 N. W. 416, and *Wickham v. Hull,* 102 Iowa, 469, 71 N. W. 352. In *Riggin v. Maguire,* 15 Wall. 549, the Supreme Court of the United States, in a decision involving the determination of whether a claim was a contingent one within the meaning of the Bankruptcy act, said: "But the better opinion is, that as long as it remains wholly uncertain whether a contract or engagement would ever give rise to an actual duty or liability, and there was no means of removing the uncertainty by calculation, such contract or engagement was not provable." In *South Milwaukee Co. v. Murphy,* 112 Wis. 614, 88 N. W. 583, it was held that liability upon a subscription for capital stock in a corporation was a contingent liability, on which a claim was not barred because not presented to the probate court for allowance within the time limited for filing claims against a decedent's estate. The court held that if a liability exists but it is uncertain whether it will ever be absolute in the sense of being enforceable it is contingent, using this language: "The terms 'debt,' 'liability' and 'absolute liability' are used in the authorities in a way to confuse and lead to wrong deductions if one does not keep in mind that the essential element of a contingent claim is uncertainty as to whether it will ever be enforceable. True, so long as a debt is absolute it is not contingent, but it is not absolute if its enforceability is dependent upon a contingency that may never happen."

The liability of Robert Barron during his lifetime, and of his estate during the whole time of the administration thereon, to creditors of the bank was not an absolute liability or fixed legal obligation but was a contingent liability. The bank during all of that time was open, meeting its obligations and paying all demands of depositors. Neither Barron nor his estate owed any debt to the creditors

of the bank until the bank suspended business and closed its doors on December 8, 1930.

In the opinion of the majority of the court it is said that the creditors of the bank were not prevented from exhibiting their claims against Barron's estate and having them allowed because the liability of Barron as a stockholder, and of his estate after his death, was contingent. It is further stated in the opinion that the creditors could have demanded payment of the bank at any time and the payment would have been made or refused; that it was their own *laches* which prevented them from obtaining the allowance of their claims against Barron's estate, and that there was no obstacle, except their own will, in the way of their making a demand on the bank. This remarkable statement of the court is concluded in these words: "It would be most inequitable to permit creditors who could with a breath remove the supposed obstacle to the prosecution of their claims, to remain inactive, to refuse even to demand payment of the bank, and by their neglect to pass on a liability to future generations."

The first twenty shares of stock that Robert Barron acquired were subscribed for by him in May, 1900, the day the bank was first organized, and his second twenty shares of stock, of the value of $2000, were purchased by him on February 19, 1914, and he continued to own all the shares of stock so purchased by him until January 28, 1925, at which latter date he sold all his stock. In the decree of the court it is found that the total liabilities of the bank to its creditors, whose number is 9674, unpaid and unsatisfied, are $740,000, and which has been proved. There is no showing in the record of the number of creditors there are who had claims against the bank for which Barron was liable on the $2000 of stock acquired by him in May, 1900, or how many creditors there are who acquired claims against the bank during the time he owned his second $2000 of stock. It is apparent, however, that there would be a very

great number of all of such creditors. Nevertheless it is said with great confidence in the decision of the court that all of those creditors whose claims accrued while Barron was a stockholder would be required to make demand on the bank for the satisfaction of their claims before they would have any right to maintain a claim against him or his estate and that if they did not do so they would be guilty of negligence. We undertake to say that the court has not fully contemplated and measured the consequences that would happen both to the bank and Mrs. Barron if the creditors had really done what the court says was their duty to do to save their rights against Barron's estate. We assert with absolute confidence that if creditors of a going bank would do what the court has decided should be done by them to protect their claims against a deceased stockholder's estate that action would result in inevitable ruin and failure of the bank.

It is our opinion that the decision of the court is unsound, and that if the creditors of a bank, in order to enforce the liability of a deceased stockholder, should make demand on the bank for the payment of their deposits the result would be a run on a bank, with the effect of its having to close its doors and suspend payment every time a responsible stockholder dies and an administration on his estate is started. Such a result would be a great loss to the community and a greater loss to the creditors of the bank than would be the loss of their claims against the deceased stockholder and would not relieve the estate of the deceased stockholder from the stockholder's liability. It seems unsound to us to hold that creditors of a bank, in order not to lose their rights against a stockholder, should be required to pursue a course that would result in forcing the bank to close its doors and suspend business.

Under section 11 of the Banking act no demand or right of action against stockholders accrued until December 8, 1930. No demand could have been maintained against

a living stockholder or the representative of a dead one until that time. Hence the provision of section 70 of the Administration act could not relieve the Barron estate from liability or be interposed by Martha Barron as a defense in this proceeding.