**FIFE v. BARNARD et al.**

No. 4073.

United States Court of Appeals. Tenth Circuit.

Jan. 2, 1951.

4. Stillwell v. Hertz Drivurself Stations, 3 Cir., 174 F.2d 714; Hower v. Roberts, 8 Cir., 153 F.2d 726; Palmer v. Miller, 8 Cir., 145 F.2d 926.

R. A. Wilkerson, Pryor, Okl., for appellants.

John Rogers and Ralph Garrett, Tulsa, Okl. (Robert L. Imler, C. H. Rosenstein, Carter Smith, Tulsa, Okl., Frank L. Warren, Alfred Stevenson, Holdenville, Okl., and Charles B. Cochran, Oklahoma City, Okl., were with them on the brief), for appellees.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

This was a quiet title action filed by appellants against the appellees in the Superior Court of Creek County, Oklahoma, and was removed by appropriate proceedings to the United States District Court for the Northern District of Oklahoma.

We pause at the outset to say that in perfecting the appeal, appellants have violated every rule of this court with respect to shortening the record. The record consists of three volumes totaling 721 pages. One volume of 173 pages alone consists entirely of the pleadings containing numerous exhibits set out in toto, when a reference to their contents would have sufficed. By this lack of industry, appellants' counsel have compelled us to do their work, wade through this labyrinth, and abstract the essential parts of the record, and have unnecessarily increased the costs of the appeal.

The defendants below, appellees here, fall into two classes—those claiming an interest under oil and gas leaseholds and those claiming as fee holders. Sinclair Oil and Gas Company, herein called Sinclair, Atlantic Refining Company, herein called Atlantic, and Arch H. Hyden, Administrator of the Estate of Sarah C. Getty, are the leaseholders and will be referred to herein when appropriate as leaseholders.[1]

The remaining defendants, appellees in this court, are the fee holders and will be so referred to when appropriate.

Lete Kolvin, a full-blood restricted Creek Indian, enrolled opposite 8092, was the owner by allotment of the Southwest Quarter of Section 16, Twp. 18N, R 7E, of the Indian Meridian. Lete Kolvin died prior to June 30, 1902. In their complaint, appellants allege that they were the heirs and the sole heirs of Lete Kolvin and as such were the owners of and in the peaceable possession of the real estate in question, and that the appellees through various chains of title claimed an interest in such real estate adverse to them. They asked that their title be quieted against each and all of the appellees and for an accounting against the leaseholder defendants below of the oil extracted from the land.

The leaseholder defendants answered setting up their claim of title under various oil and gas leases, denied the claims of appellants and asked that their title to their interest be quieted. The fee holders likewise set up their claims of title, denied the title of appellants and asked that the title to their interest be quieted.[2] The matter came on for hearing before the court on the motions by defendants for a summary judgment. Summary judgment was entered for each and every defendant against appellants quieting their titles to their respective interests in the real estate, and this appeal followed.

In footnotes 3 and 4, we have set out the various conveyances, subsequent to the death of Lete Kolvin, necessary for a con-

---

1. Atlantic also claims as a fee holder.
2. All the parties defendants set up their claims in the property based upon adverse possession. The applicable provision of the Oklahoma Statute is Paragraph 4 of Section 93, 12 O.S.A., which requires that such an action be brought within fifteen years.
3. Conveyances by deed:
 December 7, 1912, QCD, Soccer Barnett, grantor, to John D. Boxley, grantee, SW Quarter, Sec. 16, Twp. 18N, Range 7E.
 January 21, 1913, GWD, Nancy Barnett, nee Grayson, grantor, to B. H. Harrison, grantee, SW Quarter, Sec. 16, Twp. 18N, Range 7E. Approved by County Court, 1-21-13.
 January 21, 1913, QCD, J. D. Boxley, grantor, to B. Harrison, grantee, SW Quarter, Sec. 16, Twp. 18N, Range 7E.

December 11, 1915, WD, David Harrod, grantor, to J. D. Boxley, grantee, SW Quarter, Sec. 16, Twp. 18N, Range 7E. Approved 1-4-16. (The petition for approval alleges David Harrod as being an heir of Lete Kolvin.)
 5-30-16, WD, Betsey Spencer, grantor, to J. D. Boxley, grantee, SW Quarter, Sec. 16, Twp. 18N, Range 7E. Approved, County Court, 5-10-16. (Petition for approval likewise set up her claim as an heir of Lete Kolvin.)
 January 21, 1913, QCD, Milley Asbury, grantor, to B. H. Harrison, grantee, SW Quarter, Sec. 16, Twp. 18N, Range 7E. Approved County Court 1-21-13.
4. Oil and Gas Leases
 4-30-12, Nancy Barnett, nee Grayson, to John W. Gilliland, SW Quarter, Sec. 16, Twp. 18N, Range 7E.
 4-30-12, Nancy Barnett, nee Grayson,

sideration of the questions raised on this appeal.

We shall not attempt to discuss categorically all the assignments of error discussed in appellants' brief. In many respects they are interrelated and overlapping. We shall attempt to dispose of all of the legal questions inherent in the appeal.

It is first contended that in the case in the lower court was not ripe for summary judgment. The record does not support this contention. In addition to their answers resisting the claim of appellants, the fee holders filed a cross claim against the appellants and the unknown heirs, executors, etc., of Lete Kolvin, and against other deceased persons and their unknown heirs, executors, etc., claiming or purporting to claim an interest in the land, whom they made additional parties defendant, seeking a judgment quieting the title as against all of them. Appellants contend that this affirmative relief, seeking a determination of the identity of the individual heirs of these deceased persons and asking a judgment of quiet title against them, makes the case inappropriate for summary judgment. Without passing upon the soundness of this contention, it is a sufficient answer to say that no summary judgment was entered upon the cross complaint. The summary judgment adjudicated only the issues raised by appellants' complaint and appellees' answers thereto.

■ In its answer, Sinclair alleged that, "Plaintiffs have access to the courts to determine whether they are the true and lawful owners of said land * * *." Appellants seize upon this phrase and assert: "That the defendants should not be permitted to admit that the plaintiffs have access to the courts to determine whether they

are the true owners of the land and then resort to summary judgment in an effort to have such access denied." All this allegation in the answer can be construed to mean is that appellants had a right to bring an action and have the issue adjudicated. This was done by the court's summary judgment. There was no disputed issue of fact. The record, evidence, and the stipulations of the parties left no controversial issue of fact and there remained only a question of law and the court properly entered a summary judgment.

### Fee Holders

The court found that appellees, H. B. Barnard, V. V. Harris, C. B. Hyde, F. P. Swan, N. P. Mathes, Jennie C. Holman, N. B. Feagin, Bar Don Oil Company, Beulah Boxley, G. R. Eckles as Administrator of the Estate of John D. Boxley, deceased, Villard Martin as Trustee for Kathryn Cornell Maxey, Margaret Hammons, Executrix of J. D. Hammons, deceased, W. T. Anglin, Alfred Stevenson, Anglin and Stevenson, a co-partnership composed of W. T. Anglin and Alfred Stevenson, Roley Buck and Pearlie Buck, and the Atlantic Refining Company were the fee and royalty holders of the above described real estate under the Nancy Barnett, Soccer Grayson, and Milley Asbury chain of title and their predecessors in title. That they have been in the open, notorious, hostile, exclusive and continuous possession since on or about November 1, 1913, as to the South Half and since on or about April 8, 1915, as to the North Half of the above described land, and for more than fifteen years prior to the commencement of this action under color of title and claim of right.

The Soccer Barnett (Grayson) deed was dated December 7, 1912. The Nancy Bar-

Soser Grayson, Milley Ashbury, heirs of Lete Kolvin, to John W. Gilliland, SW Quarter, Sec. 16, Twp. 18N, Range 7E.

5-30-16, Betsey Spencer to W. L. Connelly, SW Quarter, Sec. 16, Twp. 18N, Range 7E. Approved County Court 5-30-16.

5-29-16, Rhoda Fife, nee Sampson, to W. L. Connelly, SW Quarter, Sec. 16, Twp. 18N, Range 7E.

6-9-15, Betsey Spencer to J. L. Hall, SW Quarter, Sec. 16, Twp. 18N, Range 7E. Assigned 6-10-16 to W. L. Connelly.

5-31-16, Ed Hart, Guardian of Lena Nelson, to W. L. Connelly, SW Quarter, Sec. 16, Twp. 18N, Range 7E. Confirmed and approved by County Court, 5-31-16. (The petition for approval of this lease refers to Lena Nelson as an heir of Lete Kolvin.)

nett deed was dated January 21, 1913, and the Milley Asbury deed was dated January 21, 1912.[5] The court found that the fee holders and their predecessors in interest went into possession of the South Half of the land in question about November 1, 1913, and of the North Half about April 8, 1915.

An examination of the record leaves no doubt that the court's finding that the fee holders and their predecessors in interest have been in the open, notorious, and continuous possession ever since the date of these original deeds and much longer than the time required to give title by prescription is supported thereby. Nor do we understand that appellants take the position that the fee holders and their predecessors in interest have not been in the actual possession of the property since the date of these deeds.[6] Rather, they contend that these original deeds were obtained under such condition that they may not successfully claim they are in possession thereunder under color of title and in good faith. A number of circumstances and arguments are made in support of this contention. Some relate to the leaseholders and others to the fee holders, but since these incidents illustrate appellants' position they will be discussed here whether they relate to the leaseholders or fee holders, or both. Thus, it is pointed out that the oil and gas lease by Nancy Barnett to John W. Gilliland was dated April 30, 1912; that it was approved upon its face May 1, 1912, by George A. Jones, Judge of the County Court, and that the petition for its approval and the order approving it are not in evidence. Apparently, based upon these assertions, appellants conclude that by virtue of these facts the instrument was void and must have been known to the grantees to be void. In support of this contention, they further say that plaintiffs in defendants' request for admission of facts "admitted that said Nancy Barnett claimed that Lete Kolvin was her illegitimate daughter, but they stated further that said Nancy Barnett claimed that her said daughter died intestate on February 1, 1899. This being true, the said illegitimate daughter was not entitled to receive an allotment. Hence, Nancy Barnett could not have inherited any land from her."

Other illustrations of a like character are given in the brief to sustain this contention of lack of good faith because of knowledge of infirmities in these original conveyances, which, in the interest of brevity will not be recounted.

It would be extraordinary indeed if the grantees in these ancient, original conveyances knew the legal requirements of a valid and perfect conveyance or that they had not been complied with or that they were void or voidable if so they were or that the present title holder had such knowledge.

The grantors in these original instruments of conveyances purport to convey as heirs of Lete Kolvin. Whether they were such heirs is beside the point, as is also the question whether the deeds were valid and effective conveyances. In fact, color of title implies an infirmity in the instrument of conveyance arising either from lack of title in the grantor or defects in the instrument of conveyance.

In Spaulding v. Beidleman, 60 Okl. 183, 160 P. 1120, 1122, Oklahoma adopted the definition of color of title in Wright v. Mattison, 18 How. 50, 56, 15 L.Ed. 280, as follows: "The courts have concurred, it is believed, without an exception, in defining 'color of title' to be that which in appearance is title, *but which in reality is no title.* (Italics ours.)"

By great weight of authority, an essential element of a prescriptive title, under color of title, is that the claimant went into possession thereunder in good faith. There is a great deal of confusion, diver-

---

5. The names of the various Indians are spelled differently throughout the record and no attempt at reconciliation will be made.

6. There is a contention that the fee hold-ers went into possession at a time when one J. H. Sanders was in possession under an agricultural lease and that by reason of said lease, they could not be in adverse possession. It is sufficient to say that this claim is without merit.

gence and disagreement in the decisions as to the meaning of good faith when used in connection with a claim under color of title. No attempt will be made to discuss, reconcile, or distinguish these cases. No Oklahoma case is cited defining good faith, and our search has failed to reveal any. The more equitable rule and the one adopted for this opinion holds that good faith requires on the part of the claimant an honest belief based upon reasonable grounds that when he obtained his deed, relied upon as color of title, that he acquired a valid title, although upon investigation it proves otherwise.[7]

Measured by this rule, there is nothing in the record which would support a finding that the present fee holders and their predecessors in interest knew of any infirmity in the conveyance in their chain of, title which would make them void and thus constitute them possessors under color of title in bad faith.

But even assuming that these original conveyances were absolutely void and known to be void by the grantees therein, it would avail appellants nothing. There is no finding or evidence which would support a finding that the present grantees and their predecessors in interest for more than fifteen years back knew or had reason to know that there was a defect, if such there was, in the title of their grantors which would make the conveyances to such predecessors or from them void. In the absence of such facts, they had a right to presume that the conveyances to them by grantees in prior deeds were valid conveyances. They were not required to search the title and trace it back to the origin to make sure that there was no defect therein in order to establish good faith under color of title. It was sufficient if, without knowledge of facts which would put a prudent man on notice, they took the title believing that by such conveyance they acquired a good title, because one lacking color of title

for any reason whatever may nonetheless confer color of title upon another.[8]

The court's finding that the fee holders had been in the open, notorious, exclusive, and continuous possession of the premises in good faith under color of title is supported by all the evidence in the record.

## The Leaseholders

The court found that appellants' claim, if any, against the leaseholders was also barred by the applicable Oklahoma Statute of Limitations. It found that Atlantic and its predecessors in title had been in the open, notorious, hostile, exclusive, and continuous possession as lessees of said royalty defendants as to the South Half of the land in question since about November 1, 1913, and for more than fifteen years prior to the commencement of this action; that Atlantic had thereby acquired a prescriptive right to the oil and gas leasehold estate on the South Half of the land. The court further found that Sinclair and the other leaseholders and their predecessors in title had been in possession as lessees of said royalty owner defendants of the North Half of said land under oil and gas leases since on or about April 8, 1915, and that by reason thereof appellants' claims, if any against them, were likewise barred by the Statute of Limitations and that they had acquired a prescriptive title to the oil and gas leasehold estate under such part of the land.

The court further found that the only claim asserted against Sinclair and the other leaseholders was the right to rents and royalties under the oil and gas leases executed by Lena Nelson, Rhoda Fife, and Betsy Spencer. These leases were executed May 30, 1916, May 29, 1916, and May 31, 1916. As further found by the court, these three leases contained a provision to the effect that the claims of the respective lessors to an interest in the land were in dispute and that at the time of their execution, the land was being operated by the

7. 2 C.J.S., Adverse Possession, § 170, pages 742, 743, 744.

8. Volume 2, C.J.S., Adverse Possession, § 62; Hitt v. Carr, 62 Ind.App., 80, 109

N.E. 456; O'Donahue v. Creagor, 117 Ind. 372, 20 N.E. 267; Nichols v. York, 219 N.C. 262, 13 S.E.2d 565; Everett v. Clayton, 211 La. 211, 29 So.2d 769.

leaseholders under leases made by parties claiming adverse to the lessors therein, and that the lessors should receive thereunder only such interest as was ultimately established by final court decree.[9]

At the time these leases were taken, the grantors therein had pending an action in the District Court of Creek County, Oklahoma, against others than Sinclair whereby they sought to establish their ownership of this land, claiming as heirs of Lete Kolvin, deceased. This action was dismissed without prejudice for want of prosecution on January 18, 1921. No further steps were taken by these parties to establish their interest, if any, to the land in question until the institution of this action, May 2, 1947.

Under the provisions set out in footnote 9, it was the duty of the lessors in these three leases, within a reasonable time, to take steps to prosecute and establish their title. Failure to do so would set in motion the Statute of Limitations and result in a loss of their right to assert their claim of right in the premises.[10]

It is not necessary to determine what was a reasonable time within which these three lessors were required to institute such an action to toll the Statute of Limitations. Twenty-one years intervened between the execution of these leases and the institution of this action. That is six years more than the fifteen year statuory period of limitation. It is sufficient to say that this was an unreasonable time to institute the action to perfect the title to this land from which oil was and is being produced, which the producing company was required to pay to others, unless claimants established a superior right to receive the same.

Appellants urge various facts and circumstances warranting the delay in instituting this action. Without discussing them in detail, it is sufficient to say that they do not, in our opinion, excuse the long delay in bringing the action. Appellants also urge that by the execution of these three leases, the leaseholders recognized the title of the grantors therein and were not thereafter in adverse possession, and that this interrupted the running of the Statute of Limitations.

The authorities are well settled that one in possession of land under color of title or claim of right may protect himself from litigation by purchasing an outstanding claim to his property and that thereby he does not admit the superiority of the title so bought, nor change his possession, which was before adverse, to a possession now subordinate to the newly acquired title.[11]

The leaseholders were in possession under prior oil and gas leases from other claimants developing and operating the property. All they thought to do, as they had a right, was to fortify themselves in their claims of right and title under the prior leases, and the taking of these leases did not interrupt the running of the Statute of Limitations.

It is now well settled that the Oklahoma Statute of Limitations applies

9. The precise language of the provision in the Rhoda Fife and Betsey Spencer leases, is as follows:
"It is understood that the claim of the lessor to an interest in said land is in dispute and that the land is now being operated for oil and gas under the terms of a lease made by parties claiming adverse to the lessor herein.
"It is therefore expressly agreed that the lessor herein shall receive as royalty or rental under this lease only that proportionate part, if any, which her interest in said land, as established by final court decree, may bear to the whole title, it being understood that the lessee or his assigns shall pay only 1/8 royalty and that the same shall be paid only to the true owners of said land as their respective interests may finally be established."
The provisions in the Betsey Spencer lease were somewhat different but not materially so.

10. See State ex rel. Schilling v. Oklahoma City, 67 Okl. 18, 168 P. 227; Atchison, T. & S. F. Ry. Co. v. Burlingame Twp., 36 Kan. 628, 14 P. 271; West v. American Telephone & Telegraph Co., 6 Cir., 108 F.2d 347; Sanders v. Merchants' State Bank of Centralia, 349 Ill. 547, 182 N.E. 897, 905.

11. Elder v. McClaskey, 6 Cir., 70 F. 529; Hurie v. Quigg, 121 Okl. 80, 247 P. 677; See also 125 A.L.R. 825, for other cases.

to restricted Indians the same as to others, and that it applies both retrospectively as well as prospectively.[12]

 Summing up, the judgment is based on the findings that all the appellees were in the open, notorious, exclusive and adverse possession of the land and interest in question, in good faith, under claim of color of title and claim of right for a time sufficient to interpose the Oklahoma Statute of Limitations as a bar to appellants' asserted rights. The record supports these conclusions.

We find no error in the record and the judgment is accordingly affirmed.

12. Section 2, Act of Congress of April 12, 1926, 44 Stat. 239; Tomlin v. Roberts, 126 Okl. 165, 258 P. 1041, 1044; Wolfe v. Phillips, 10 Cir., 172 F.2d 481, 482.