WILLIAM E. MORTIMER *et al.*

*v.*

EDWIN A. POTTER, Receiver.

*Opinion filed December 22, 1904.*

1. WILLS—*language construed as not passing the title to bank stock.* A clause in a will directing the trustees of all the testator's property "to pay unto my said wife, from the time of my decease as long as she shall live, an annuity of $2000 a year, and also all dividends that may be declared *during the time last mentioned"* on certain bank stock, does not pass the title in the bank stock to the wife, but merely the right to the dividends during her life.

2. TRUSTS—*when an estate is liable for assessment on national bank stock.* Where a trustee distributes the trust estate, consisting, in part, of stock in an insolvent national bank, leaving unpaid an assessment previously ordered by the comptroller under the authority of the Federal statute, each distributee receiving more than the amount of the assessment, the trustee and the distributees are each liable, in equity, for the assessment.

3. LIMITATIONS—*statute limiting filing of claims against estate does not bar assessment on national bank stock.* The remedy provided by the Federal statute authorizing the levy of an assessment against the estate of the holder of stock in an insolvent national bank may be enforced as long as the assets can be reached, regardless of the expiration of the statutory period for filing claims against the estate.

4. EQUITY—*objection of adequate remedy at law must be raised below.* Objection of adequate remedy at law will not be considered on appeal when not raised below by demurrer or answer to the bill.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

KERR & KERR, for appellants.

ELMER H. ADAMS, (EDMUND W. FROEHLICH, of counsel,) for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Appellee filed a bill in the superior court of Cook county against appellants to collect an assessment upon ten shares of the capital stock of the National Bank of Illinois, owned by Charles Kavanagh, deceased. On answer filed, and replication thereto, the cause was heard on an agreed statement of facts and the bill dismissed for want of equity. The receiver appealed to the Appellate Court for the First District, which reversed the decree of the superior court and remanded the cause, with directions. To reverse that judgment the defendants below have perfected this appeal.

It appears from the stipulation of the parties that on and prior to April 1, 1873, Charles Kavanagh owned ten shares of the capital stock of the National Bank of Illinois, of the par value of $100 each. He died on that date, leaving a will afterward probated, and his estate was administered upon and settled in due course of administration about two years after his death. By the provisions of his will he created a trust vesting all of his property in two trustees, William E. Mortimer and his widow, Lydia Kavanagh, which trust was to continue for and during the lifetime of his wife. The third clause of the will is as follows: "To pay unto my said wife, from the time of my decease as long as she shall live, an annuity of $2000 a year, and also all dividends that may be declared during the time last mentioned upon the ten shares of stock in the National Bank of Illinois, now owned by me." He also directed by his will that there should be paid to such person or persons as his wife by her will should

name and appoint, the sum of $10,000. After other bequests, the Chicago Home for the Friendless, the Chicago Relief and Aid Society and the Chicago Christian Union were made residuary legatees. On December 21, 1896, the National Bank of Illinois failed and a receiver was duly appointed for it, to which receivership appellee afterwards succeeded. On March 14, 1899, the comptroller of the currency ordered that an assessment of one hundred per cent of the capital stock of said bank be levied, to become payable April 14 of that year. On August 24 of the same year, 1899, the widow, Lydia Kavanagh, died testate, having nominated Mary E. Holden as her appointee under the power in her husband's will, to receive the $10,000, and whom she also nominated as her executrix and sole legatee and devisee. Her will was duly admitted to probate soon after her death, and the estate was declared settled in due course of administration on June 10, 1902. During the administration the National Bank of Illinois filed no claim against her estate. After her death and after the order had been made by the comptroller of the currency levying said assessment, Mortimer, the sole surviving trustee, distributed the remaining assets of the estate of Charles Kavanagh in his hands according to the provisions of the said last will and testament of Charles Kavanagh, paying to each of the residuary legatees the sum of $1500. The assessment upon the capital stock remaining unpaid, with no funds in the hands of the trustee with which to pay the same, this bill was filed. By their answer the defendants, among other things, set up that by the acceptance of the widow under the third clause of her husband's will, the capital stock in question was segregated from the general body of his estate, whereby she alone became liable for the assessments thereon. By the judgment of the Appellate Court remanding the cause the superior court was directed to enter a decree for the complainant for $1000, with interest from April 14, 1899, against all of the defendants,—primarily against the trustee as such, secondarily against the legatees

and distributees, ultimately against the trustee personally.

It is argued on behalf of appellants that the ten shares of stock by the will of Charles Kavanagh accepted by his widow became the property of Lydia Kavanagh and ceased to belong to his estate, hence this proceeding cannot be maintained. If the position is tenable other questions in the case become unimportant. We will therefore consider it first.

The determination of the question must turn upon the construction to be given to the third clause of the will of Charles Kavanagh. Did the testator thereby intend to give his wife the stock? He gave all of his estate to trustees for certain expressed purposes. They were to pay his wife all dividends that might be declared *"during the time last mentioned upon the ten shares of stock,"* etc. By this language the wife is not even given the custody or control of the stock itself, much less the power or right to dispose of it as her own. She was simply entitled to receive the dividends declared upon it, during her lifetime. It seems to us too clear for argument that the testator did not intend to give her the stock. We do not agree with counsel for appellants that Mrs. Kavanagh had a life estate in the stock. The title to the same was in the trustees or executors of the estate of Charles Kavanagh. It is perfectly clear from the evidence that she never claimed the stock, nor was it dealt with, either by her or her co-trustee, William E. Mortimer, as other than the property of the estate of Charles Kavanagh, deceased, the dividends being receipted for on the bank's books at all times in that way. From 1884 until the bank ceased to pay dividends, in 1896, checks were drawn for the dividends, payable to Charles Kavanagh and endorsed "Lydia Kavanagh, trustee for the estate of Charles Kavanagh, deceased." We think that the Appellate Court properly held that the shares of stock belonged to the estate of Charles Kavanagh, deceased, and not to his widow, Lydia Kavanagh.

The appellant Mortimer, after he knew that the assessment had been ordered, divided the remaining estate in his

hands among appellants, as above stated. Section 5151 of the Federal statute, under which the liability here sued for is established, is in the following language: "The shareholders of every national bank shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts and acknowledgments of such association to the extent of the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares." Section 5152 of the same statute is as follows: "Persons holding stock as executors, administrators, guardians or trustees shall not be personally subject to any liabilities as stockholders, but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward or person interested in such trust funds would be if living and competent to act and hold the stock in his own name." Under these sections the executors or trustees were liable for this assessment the same as Kavanagh would have been if living, and in view of the fact that Mortimer had distributed the estate leaving the claim unpaid, and each devisee had received more than the amount of the entire assessment, they are each liable therefor in equity.

It is next insisted by appellants that even though this claim is valid against the estate, yet it cannot be enforced because it is barred by the Statute of Limitations, not having been presented for probate against the estate of Kavanagh within two years after the granting of testamentary letters. The claim against his estate is not by virtue of the laws of this State but under the provisions of the foregoing Federal statute. In addition to this, at the time the administration of his estate was closed the claim had not accrued. The liability arose more than twenty years after the expiration of the two years within which claims could have been filed against it in the probate court. But the remedy under the act of Congress is applicable, and the estate is liable under its provisions so long as the assets can be reached. The case of *Zimmerman* v. *Carpenter,* 84 Fed. Rep. 750, involved this

same question. It was there claimed that a plea of the Statute of Limitations, based upon the statute of the State of South Dakota regulating the time in which claims should be presented for allowance or rejection against the estate, barred the claim there presented. In considering the question the court said :. "Any theory upon which it is sought to maintain that the claim here attempted to be enforced is an ordinary claim against the estate of the deceased, to be represented and allowed in the manner required by the laws of the State of South Dakota, and if not so presented and allowed to be forever barred by the statute, involves a total misconception of the object, meaning and effect of sections 5151 and 5152 of the Revised Statutes of the United States. Congress provided by these sections that the estate of the testator in the hands of an executor should be liable in like manner and to the same extent as the testator would be if living and competent to act and hold the stock. By the language of section 5152 the death of the testator does not in any way affect the liability of the estate, except if no liability on the stock arises until after the estate is fully distributed then there would be no estate to be charged." Under the facts in this case the liability attached while the assets were in the hands of the trustee, and therefore came directly under the provisions of section 5152, *supra.*

It is next insisted that the remedy of appellee was at law, and not in equity. We do not find that this question was raised either by demurrer to the bill or the answer thereto. It cannot, therefore, be urged now. The decisions of this court to that effect are numerous. The reasons for the practice are manifest. We entertain no doubt, however, that the complainant's complete and adequate remedy was in a court of equity, where, only, ample and complete justice could be done to all parties interested. The creditors of the defunct bank were entitled to the benefit of the assessment guaranteed to them by the act of Congress, and the distributees had no just claim to the bequests given them without the burden

attached to the residuary assets in the hands of the trustee. Why should they receive the full benefit of the bequests given them by the will of Charles Kavanagh and at the same time be relieved of the equitable lien which attached to the residue of the estate in the hands of Mortimer, the trustee?

We think the direction of the Appellate Court in its judgment remanding the cause to the superior court does justice to all parties here interested. Its judgment will accordingly be affirmed.

*Judgment affirmed.*