JONES et al. v. CRONKLETON (two cases).
Nos. 9681, 9694.

Circuit Court of Appeals, Eighth Circuit.

Aug. 21, 1933.

See, also, Cronkleton v. Jones, 67 F. (2d) 21.

Francis A. Brogan, of Omaha, Neb. (P. E. Boslaugh, of Hastings, Neb., on the brief), for appellants in case No. 9681.

Barton H. Kuhns, of Omaha, Neb. (P. E. Boslaugh, of Hastings, Neb., on the brief), for appellants in case No. 9694.

R. O. Canaday, of Hastings, Neb., and Leonard A. Flansburg, of Lincoln, Neb., for appellee in both cases.

Before KENYON and VAN VALKEN-BURGH, Circuit Judges, and DEWEY, District Judge.

VAN VALKENBURGH, Circuit Judge.

Alonzo L. Clarke, of Hastings, Neb., was president of the First National Bank of that city. He died in 1918, leaving a large estate and a will containing thirty-two paragraphs. Of these only paragraphs 25, 26, and 27 have a primary bearing upon the issues here. Paragraphs 28 and 31 receive consideration with respect to the designation and appointment of trustees and the powers conferred upon executors. Paragraphs 25, 26, and 27 read as follows:

"25. I give and bequeath to my executors and their successors in trust one hundred (100) shares of the capital stock of the First National Bank of Hastings, Nebraska, in trust, to collect and receive the dividends and income therefrom annually, or at the time they shall be declared or received, to Mrs. Gertrude Touzlin Clarke, my daughter-in-law, of Manilla, P. I., during her natural life, and at the time of the death of said Mrs. Gertrude Touzlin Clarke I give and bequeath said one hundred (100) shares of the capital stock of the First National Bank of Hastings, Nebraska, and the accrued accumulations therefrom to the issue of her body by William H. Clarke, and in the event of default of such issue, I give and devise said stock and the accrued accumulations therefrom at said time to William H. Clarke, if living, and in the event that said William H. Clarke shall be at said time deceased, I give and bequeath said stock and its accumulations to the heirs, at law of William H. Clarke, deceased, and direct my said executors or their successors in trust to convey, transfer, deliver and pay the same as herein directed and provided.

"26. I give and bequeath to my executors and their successors in trust one hundred (100) shares of the capital stock of the First National Bank of Hastings, Nebraska, in trust, to collect and receive the dividends and income therefrom and to pay the dividends and income therefrom annually, or at the time they shall be declared or received, to Mrs. Carrie Detweiler Clarke, my daughter-in-law, of Omaha, Nebraska, during her natural life, and at the time of the death of said Mrs. Carrie Detweiler Clarke, I give and bequeath said one hundred (100) shares of the capital stock of the First National Bank of Hastings, Nebraska, and the accrued accumulations therefrom to the issue of the body of Mrs. Carrie Detweiler Clarke by Frank N. Clarke, and in the event of default of such issue, I give and devise said stock and the accumulations therefrom at said time to said Frank N. Clarke, if living, and in the event that said Frank N. Clarke shall be, at said time, deceased, I give and bequeath said stock and its accumulations to the heirs at law of said Frank N. Clarke,

deceased, and direct my executors or their successors in trust to convey, transfer, deliver and pay the same as herein directed and provided.

"27. I give, devise and bequeath to my executors and their successors in trust all the rest, residue and remainder of my estate, real, personal and mixed, wheresoever situated of which I may die seized or possessed, or to which I may be entitled at the time of my decease, in trust, to divide the same into eight (8) equal parts, and for this purpose and to accomplish this end my executors named herein may sell and convey and are hereby empowered and authorized to sell and convey any part or all of the residue of my estate, if it can be done without material loss and injury thereto, and

"To hold and invest one-eighth (⅛) thereof, to collect and receive the interest, income and accumulation therefrom, and to annually pay the interest, income and accumulation therefrom to William H. Clarke, my son, of Manilla, P. I., during the term and period of his natural life, and at the time of the death of said William H. Clarke, I give, devise, and bequeath said one-eighth (⅛) of the said residue of my estate, and the accrued accumulations therefrom, to the heirs at law of said William H. Clarke, deceased, and direct my said executors or their successors in trust to pay, transfer, convey and deliver the same to his heirs at law, absolutely.

"To hold and invest one-eighth (⅛) thereof, to collect and receive the interest, income and accumulation therefrom, and to annually pay the interest, income and accumulation therefrom to Mrs. Gertrude Touzlin Clarke, my daughter-in-law, of Manilla, P. I., during the period of her natural life, and at the time of the death of said Mrs. Gertrude Touzlin Clarke, I give, devise and bequeath said one-eighth (⅛) of the said residue of my estate, and the accrued accumulations therefrom, to the issue of her body by William H. Clarke, and in the event of default of such issue I give, devise and bequeath said one-eighth (⅛) of the said residue of my estate and the accrued accumulations therefrom to said William H. Clarke, if living, and in the event the said William H. Clarke shall be at said time deceased, I give, devise and bequeath said one-eighth of the said residue of my estate and its accumulations to the heirs at law of said William H. Clarke, deceased, and direct my executors or their successors in trust to pay, transfer, convey and deliver the same as herein directed and provided.

"To hold and invest one-eighth (⅛) thereof, to collect and receive the interest, income and accumulation therefrom, and to annually pay the interest, income and accumulation therefrom to Frank N. Clarke, my son, of Omaha, Nebraska, during the term and period of his natural life, and at the time of the death of said Frank N. Clarke, I give, devise and bequeath said one-eighth (⅛) of the said residue of my estate, and the accrued accumulations therefrom, to the heirs at law of said Frank N. Clarke, deceased, and direct my said executors or their successors in trust to pay, transfer, convey and deliver the same to his heirs at law, absolutely.

"To hold and invest one-eighth (⅛) thereof, to collect and receive the interest, income and accumulation therefrom, and to annually pay the interest, income and accumulation therefrom to Mrs. Carrie Detweiler Clarke, my daughter-in-law, of Omaha, Nebraska, during the term and period of her natural life, and at the time of the death of said Mrs. Carrie Detweiler Clarke I give, devise and bequeath said one-eighth (⅛) of the said residue of my estate, and the accrued accumulations therefrom to the issue of her body by Frank N. Clarke and in the event of default of such issue, I give, devise and bequeath said one-eighth (⅛) of the said residue of my estate and the accumulations therefrom at said time to said Frank N. Clarke, if living, and in the event the said Frank N. Clarke shall be at said time deceased, I give, devise and bequeath said one-eighth (⅛) of the said residue of my estate, and its accumulations, to the heirs at law of said Frank N. Clarke, deceased, and direct my executors or their successors in trust to convey, transfer, pay and deliver the same as herein directed and provided.

"I hereby give, devise and bequeath one-eighth (⅛) of said residue of my estate to James N. Clarke, my brother, of Hastings, Nebraska, and I direct that my executors pay, transfer, convey and deliver the same to him absolutely.

"I hereby give, devise and bequeath one-eighth (⅛) of said residue of my estate to Hattie D. Clarke, my sister-in-law, of Hastings, Nebraska, and I direct my said executors to pay, transfer, convey and deliver the same to her absolutely.

"I hereby give, devise and bequeath one-fourth (¼) of said residue of my estate to Mrs. Lida Clarke Seaton, my daughter, of Upminster, England, and I direct my said executors to pay, transfer, convey and deliver the same to her absolutely."

Paragraph 28 provides for the speedy ad-

ministration of the estate, at the termination of which named trustees are directed to carry out, execute, and perform all and any part of the trusts not completed or terminated as created, established, and provided for in paragraphs 21 to 27 of the will. If for any reason the trustees named could not accept, then trustees should be appointed by a court of competent jurisdiction.

The issues in causes Nos. 9681 and 9694 are identical. The one hundred shares of bank stock involved in each case were, after the testator's death, transferred to the executors upon the books of the bank, and later were transferred to the testamentary trustees under the following recital on the stub record of the stock book: "This does not represent a transfer on account of a sale or change of ownership but merely a re-issue on account of a change of administrative officers of the estate."

By other transfers of the same general nature and effect, appellants, as successors in trust, have received and now hold these certificates of stock. By these paragraphs of the will Gertrude Touzlin Clarke, wife of William H. Clarke, and Carrie Detweiler Clarke, wife of Frank N. Clarke, were given life estates. Frank N. Clarke died January 28, 1932, and William H. Clarke died February 10, 1932. The ultimate distributees of these trust estates are contingent, and the testamentary trustees stand in place of the testator, as his representative, holding the trust property for ultimate distribution. Since the death of the testator both life estate holders have received, through trustees, all dividends paid on said bank stock.

By stipulation it appears that the undistributed portion of the residue of the estate of the testator held in trust under paragraph 27 of the will is of a value not less than $200,000, representing one half of the entire residue. The other half was distributed during administration. The provisions for Gertrude Touzlin Clarke and Carrie Detweiler Clarke, and their contingent remaindermen, were one-eighth of this entire residue, or one-fourth of the balance undistributed and remaining in trust. This amounts in each case to at least $50,000.

October 5, 1931, the First National Bank of Hastings became insolvent, and, October 13, 1931, George G. Cronkleton was appointed receiver. November 16, 1931, the Comptroller of the Currency issued an order assessing the shareholders of said bank a sum equivalent to the par value of their stock, and accordingly assessed the trustees under paragraphs 25 and 26 of the will. By stipulation a jury was waived and the cases, for purposes of trial, were considered and heard together. In cases Nos. 9681 and 9694 the court found for the receiver against the trustees for the amount of the par value of the stocks held by them, with interest and costs, and adjudged that such judgments should be satisfied out of the trust funds in the hands of such trustees under said paragraphs 25, 26, and 27 of the will. From that part of the judgment subjecting the trust funds held under paragraph 27 to the payment thereof, appellants have appealed.

The following paragraphs from the agreed statement of facts are instructive in disclosing the various steps taken in the administration of the estate, and of the trusts created by the will, also of the various resignations and resulting appointments made, whereby appellants Jones and McWhorter have become trustees in the trusts here under consideration:

"(d) That on June 1, 1923, the said Wesley A. Taylor and Charles B. Hutton resigned as executors under the said will, and upon due hearing they were discharged as executors, and released from all further liability as such, and Peter McIntosh and O. A. Riley were appointed administrators with will annexed, qualified as such, and thereafter continued to administer the remaining assets of the said will, not including any of the assets contained in the trusts created by Paragraphs 21, 22, 23, 24, 25, 26, and 27 of the said will, which assets had been transferred to Neil H. Dunn and Arthur H. Jones and Wesley A. Taylor as trustees, and thereupon, in the year 1928, the said Peter McIntosh and O. A. Riley duly submitted their final report to the county court of Adams County, Nebraska, and upon due hearing, and upon a showing that the estate had been finally administered and all the assets distributed under the provisions of the said will, the administration was closed, and the said administrators were discharged.

"(e) That by an order duly entered in the county court of Adams County, Nebraska, on the 17th day of March, 1922, upon the petition of the then executors of the said estate, the assets bequeathed in trust under the provisions of Paragraphs 21, 22, 23, 24, 25, 26, and 27 were transferred to the trustees in the several trusts, and the executors of the said estate were directed to transfer the said assets to the trustees, either those appointed in said will, or as successors in said trust by the District Court of Adams County, Nebraska, and such transfers were made, and at all times

from the first day of June, 1923, until the closing of the estate, the management of the said trusts by the trustees was in all respects separate and distinct from the management by the administrators.

"(f) That in the year 1930, the said Neil H. Dunn resigned as trustee, and by an order duly entered in the District Court of Adams County, Nebraska, Archie D. Marvel was appointed as his successor, and the said Arthur H. Jones and Archie D. Marvel continued the administration of the said trusts created by Paragraphs 21, 22, 23, 25, 26, and 27 of the said will, and thereafter, in the year 1932, the said Archie D. Marvel resigned as co-trustee, and by an order duly entered in the District Court of Adams County, Nebraska, Ford Mc-Whorter was appointed as successor in trust, with Arthur H. Jones as co-trustee."

The governing statute is section 5152, Rev. St. (12 USCA § 66), which reads thus: "Persons holding stock as executors, administrators, guardians, or trustees, shall not be personally subject to any liabilities as stockholders; but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward, or person interested in such trust funds would be, if living and competent to act and hold the stock in his own name."

The contention of the appellee receiver is that "the assets held in trust under the will of Alonzo L. Clarke are liable for the stock assessment on the stock placed in trust under the will, regardless of the fact that they are held under separate bequests and for separate beneficiaries."

He concedes that the liability of the trustee is limited to the funds still in his hands when the assessment is levied, and that funds which have theretofore been properly distributed cannot be followed, and disclaims any attempt to fix a debt against the estate of the testator under the laws establishing such liabilities in the administration of estates. Compare Luce v. Thompson (C. C. A. 8) 36 F. (2d) 183. He points out that the funds of the trustees here, particularly the residuary estate, paragraph 27 of the will, are not finally distributed. Counsel say: "Our theory is that these funds, transferred by the testator to a testamentary trustee and held by the testamentary trustee for distribution, represent the estate and funds of the testator in the trustee's hands in the transition of a transfer of title to someone else unknown."

This theory of appellee places a trustee in the same category as the executor or administrator of an estate not distributed nor closed.

In the brief the proposition is thus stated: "An executor is liable as a trustee for funds actually in the executor's hands when the assessment is levied. The relation of the testamentary trustee, the successor of the executor, is in every respect exactly the same as if the executor had continued as trustee throughout the entire period of the trust. The executor, while acting as such, held the properties in trust for future distribution under the terms of the will. The testamentary trustee does identically the same thing."

This means that, in appellee's view, the estate of the testator, although its assets had been distributed, and the administrator with the will annexed had been discharged many years before the assessment by the Comptroller of the Currency, was in effect still open to charge funds, still in the hands of trustees under the will, without regard to the particular trust under which held, with the payment of this assessment. The trial court rejected this theory of appellee, but still found in his favor upon the ground stated in its opinion, to wit:

"The will discloses the purpose of the testator to create a number of separate trusts each to be managed independently. Neither the fact that they were established by the same grantor, nor the fact that they were to be managed by the same trustees is of importance. If the testator had devised a farm trust in trust for the benefit of A and B, and had bequeathed a mercantile business in trust for the benefit of C and D, it would seem obvious that the trusts were distinct and that each should bear its own risks of continued operation. An examination of the character of the trusts established by the testator shows that each trust was distinct, and the property of the several trusts could not lawfully be mingled, the property of one could not be held for the taxes, expenses, or debts of another, and the profits or losses of each trust should be credited or charged to its own corpus.

"It is not the purpose of the statute, which has been quoted, to take the property of one who was not a stockholder for the debt of the stockholder. The 'estate and funds' in the hands of the trustee are the property and assets belonging to the particular trust to which the bank stock belonged. Applying this rule, the trust created in section 25 of the will was substantially identical with the trust created in that part of section 27 which reads as follows:

"'I give, devise and bequeath to my executors and their successors in trust all the rest, residue and remainder of my estate, real, per-

sonal and mixed, wheresoever situated of which I may die seized or possessed, or to which I may be entitled at the time of my decease, in trust, to divide the same into eight (8) equal parts, and for this purpose and to accomplish this end my executors named herein may sell and convey and are hereby empowered and authorized to sell and convey any part or all of the residue of my estate, if it can be done without material loss and injury thereto, and * * *

" 'To hold and invest one-eighth (⅛) thereof, to collect and receive the interest, income and accumulation therefrom, and to annually pay the interest, income and accumulation therefrom to Mrs. Gertrude Touzlin Clarke, my daughter-in-law, of Manilla, P. I., during the period of her natural life, and at the time of the death of said Mrs. Gertrude Touzlin Clarke I give, devise and bequeath said one-eighth (⅛) of the said residue of my estate, and the accrued accumulations therefrom, to the issue of her body by William H. Clarke and in the event of default of such issue, I give, devise and bequeath said one-eighth (⅛) of the said residue of my estate and the accrued accumulations therefrom to said William H. Clarke, if living, and in the event the said William H. Clarke shall be at said time deceased, I give, devise and bequeath said one-eighth (⅛) of the said residue of my estate, and its accumulations, to the heirs at law of said William H. Clarke, deceased, and direct my executors or their successors in trust to pay, transfer, convey and deliver the same as herein directed and provided.'

"The receiver is entitled to a judgment against the trustees in this case, not personally, but as trustees, to be satisfied out of the trust funds in their possession under both sections of the will of Alonzo L. Clarke and of the portion of section 27 which has been quoted, with interest as prayed. Bowden v. Johnson, 107 U. S. 251 [2 S. Ct. 246, 27 L. Ed. 386]."

This opinion was filed in cause No. 9681, with especial reference to the shares of stock held under paragraph 25 of the will. It applies equally to those held under paragraph 26. The lower court, in its opinion and resulting judgment entry, carefully preserved the established principle that separate trusts, in general, should be kept separate and distinct; so that, as he says, "the property of the several trusts could not lawfully be mingled, the property of one could not be held for the taxes, expenses, or debts of another, and the profits or losses of each trust should be credited or charged to its own corpus." No such intermingling results from the judgment below. An obligation is imposed upon the trustee in a testamentary trust to respond to an assessment of this nature to the extent of all trust property held by the trustee for the same beneficiaries. The court finds the obvious fact that the beneficiaries in paragraphs 25 and 27 of the will, as in paragraphs 26 and 27, are identical. The present and contingent enjoyment of the benefits of these trusts are the same. The trustees in all three trusts are identical, although, as the trial court says, the fact that the trusts created in the separate paragraphs were to be managed by the same trustees is not of controlling importance. The statute makes the trust estates and funds in the hands of these trustees subject to this liability. The trustees, therefore, are liable for this assessment to the extent of all funds and properties held by them for the same beneficiaries and upon the same terms, even though such funds and properties result from the provisions of different paragraphs of the same will. The identity of trustees and beneficiaries in cause No. 9681 under paragraphs 25 and 27 of the will are apparent; likewise in cause No. 9694 under paragraphs 26 and 27.

The judgments in these two causes were right, and accordingly are affirmed.