### DRAKE v. DILATUSH.
#### No. 730-D.

District Court, E. D. Illinois.
May 11, 1936.

Thompson, White & Ingram, of Sullivan, Ill., for plaintiff.

E. J. Hawbaker, of Monticello, Ill., for defendant.

LINDLEY, District Judge.

Plaintiff brought this suit in equity against Annie Dilatush and Annie Dilatush, as executrix of the estate of Frank V. Dilatush, deceased. The court later dismissed the motion as to Annie Dilatush. The cause is at issue upon an amended and supplemental bill of complaint and answer thereto by defendant as executrix.

J. R. Drake is the duly designated, qualified and acting receiver of the First National Bank of Monticello, by appointment of the Comptroller of the Currency, on January 12, 1934. He succeeded himself as conservator, to which latter office he had been appointed on March 31, 1933.

Frank V. Dilatush, a stockholder and director of the bank, died testate April 27, 1932, owning 45 shares of the capital stock of the bank of the par value of $4,500. He left surviving as his sole heir at law, his daughter Annie Dilatush. His will was admitted to probate, and letters testamentary were issued on May 3, 1932, to Annie Dilatush, as executrix under his last will and testament. She is still acting as such; the estate has not been closed, but is being administered in the county court of Piatt county, Ill., which has probate jurisdiction. The appraisement of the testator's property showed personal property on the farms of approximately $10,000 in value. Defendant inventoried the real estate consisting of three tracts, 304.82 acres of land in Champaign county, 240 acres in Piatt county, and 45.26 acres in Piatt county. The last two tracts are free of incumbrances. The first is incumbered by a mortgage securing $20,000, held by the Equitable Life Assurance Society. Under the will, the shares in the bank and all other property passed to the defendant as executrix.

In the administration of the estate, the defendant fixed July 5, 1932, as the date upon which claims could be filed against the estate, as provided by the statute of the state of Illinois, and the time for filing claims in court, under the statute of Illinois, expired one year from the granting of the letters of executorship, long prior to plaintiff's appointment as receiver and long prior to any assessment by the Comptroller. The conservator, while in charge, performed some banking functions. Claims have been filed and allowed against the estate, aggregating approximately $18,000, and there is pending a disputed claim for $12,063.

On the 2d day of April, 1934, the Comptroller of the Currency of the United States made an assessment upon all shares, of 100 per cent. of the par value thereof, including the shares held by defendant as executrix, and on April 9, 1934, written demand was made upon defendant for the payment of such assessment. The bank was closed March 4, 1933, under proclamation of the Governor of Illinois. . It never reopened, but remained closed under such proclamation, and has been in process of liquidation since the appointment of the receiver.

Defendant contends that there is no proper description of plaintiff in the bill of complaint. The proper name is J. R. Drake, Receiver of the First National Bank of Monticello, Illinois. Plaintiff omitted the word "Illinois," but by its motion now presented seeks leave to amend by adding the word "Illinois" to plaintiff's title. This

122

amendment the court allows in furtherance of justice. No harm results to defendant.

■ Defendant insists that plaintiff's remedy is at law; that such legal remedy is adequate and that equity has no jurisdiction. The assessment was made in pursuance of the statutes of the United States governing national banking associations. Title 12, U.S.Code, § 64, 12 U.S.C.A. § 64, provides that "The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock." Section 66 (12 U.S.C.A. § 66) provides that "Persons holding stock as executors, administrators, guardians, or trustees, shall not be personally subject to any liabilities as stockholders; but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward, or person interested in such trust funds would be, if living and competent to act and hold the stock in his own name." The suit is grounded upon section 66, and seeks, therefore, no personal liability against defendant, for this, the statute expressly denies. Rather plaintiff seeks to establish a liability against "the estate and funds in the hands" of the executrix, so that such property, held in her fiduciary capacity, shall be subjected to the assessment to the same extent as the testator himself would have been liable if living. In other words, the plaintiff seeks to establish a liability of which he cannot obtain recognition in the probate court and to subject property in the hands of a fiduciary of a deceased testator to a statutory liability. It would seem obvious that such remedy lies only in a court of equity. Courts of equity have always opened their doors to prayers for relief, which seek, not to establish liabilities at law, for tort, in assumpsit or otherwise, but seek to reach property beyond the reach of a court of law and isolated in the hands of a trustee, receiver, guardian or other fiduciary. The enforcement of trusts is a matter of equity, and jurisdiction is taken of suits against executors and administrators, as upon a trust to be executed. Kendall v. Creighton, 23 How. 90, 16 L.Ed. 419; Corker v. Jones, 110 U.S. 317, 4 S.Ct. 19, 28 L.Ed. 161. Even if there were a remedy at law provided by state statute, that fact, the Supreme Court has said, will not deprive the federal court of jurisdiction to enforce a lien by bill in equity, the establishment of the lien being essentially an equitable proceeding. Sheffield Furnace Co. v. Witherow, 149 U.S. 574, 13 S.Ct. 936, 37 L.Ed. 853; De La Vergne Refrigerating Mach. Co. v. Montgomery Brewing Co. (C.C.A.) 46 F. 829, reversed on other grounds (C.C.A.) 57 F. 111.

Probate estates were originally solely within the jurisdiction of courts of equity and transfer thereof to probate courts is a matter of statute. Thus Pomeroy's Equity Jurisprudence, vol. 1 (4th Ed.), p. 191, says: "The relation subsisting between executors and administrators on the one hand, and legatees, distributees, and creditors on the other, has so many of the features and incidents of an express active trust, that it has been completely embraced within the equitable jurisdiction in England, and also in the United States, where statutes have not interfered to take away or to abridge the jurisdiction."

I conclude, therefore, that plaintiff's cause of action, being one not to establish a personal liability, but to have established a liability against property in the hands of the fiduciaries, cannot adequately be given fruition in a suit at law, but is clearly within equity jurisdiction.

■ Defendant's answer sets up that heretofore in a suit in the state court plaintiff by way of cross-bill sought to enforce the same liability here asserted. This fact is relied upon as ground for abatement. But the record is that such prayer for relief was voluntarily withdrawn by plaintiff. There was, therefore, no adjudication and nothing to furnish ground for abatement.

■ Defendant contends that the liability upon the assessment is not a contractual one, but a penalty; that the bank conservation act, having been adopted subsequent to the attaching of ownership of testator's shares, is, in effect, retroactive and ex post facto in character, and, therefore, invalid; that under the terms, subsequent to March 3, 1933, the management of the bank was taken from the stockholders, the directors and officers and put in the hands of a conservator under order and instructions from the Comptroller and operated by him in the restricted manner possible under such act. It is insisted that the Comptroller's only legal power was to declare the bank insolvent, appoint a receiver and liquidate the institution. It is said that by ousting the bank's management

the Comptroller and conservator have estopped themselves to assert the liability of the stockholder.

True it is that where the performance of contract, lawful in its execution, is made unlawful by any subsequent event, the contract is dissolved, and that impossibility of performance created by acts of law operates as a discharge. But, admitting for the moment, only for the purpose of disposal of this question, that the conservation act and its operation were illegal or unconstitutional, that fact does not relieve the stockholder of its statutory liability. The reasoning of the cases relied upon by defendant is not applicable to the present situation.

In the case of Barbour et al. v. Thomas (D.C.) 7 F.Supp. 271, 276, it appeared that the First National Bank of Detroit was closed as a result of the Governor's proclamation and it was said that stockholders should not be liable for shrinkage of assets because of the allegedly illegal holidays or the acts of the conservator. The court held, however, that the statutory liability of stockholders is immediately available for creditors when there are valid debts made by the bank and the Comptroller is satisfied that it is necessary to make the levy to satisfy the debts, saying: "It would be a novel proposition if a bank stockholder could defeat the creditors by showing the assets were dissipated through the acts of the officers appointed to administer them. Such a principle would make it necessary for the courts to review every act of such officers and make the cost of collecting the assessment greater than any amount that could be collected. The statute makes no provision for the relief of bank stockholders on account of dissipation of assets. * * * Therefore it is immaterial whether the bank was solvent on the dates of the state and national holidays and at the time of the appointment of a conservator, nor is it material whether the sale of a part of the assets by the conservator, which was approved by a court of competent jurisdiction, resulted in the insolvency of the bank. The sale did not create the debts and consequently could not release the liability of the bank stockholders. The allegations in these respects and the proof tendered in support thereof were immaterial to the main issues, did not, and could not, constitute a defense at law or in equity. Day v. United States, 245 U.S. 159, 38 S.Ct. 57, 62 L.Ed. 219."

The court said further: "This court deems it unnecessary to inquire into the legality of the holidays. Northern Pacific R. Co. v. American Trading Co., 195 U.S. 439, 25 S.Ct. 84, 49 L.Ed. 269. However, the bank officials closed the bank. If the holidays were illegal, then they were not legally compelled to obey."

So here, if the proclamation of the Governor was illegal, the bank officers and directors were in no way bound by the same and might have ignored it. Likewise, if the appointment of the conservator and his acts were, as defendant contends, illegal and unconstitutional because of ex post facto character and beyond the powers of the Congress, the time to attack such appointment was when it was made. The officers, directors, and stockholders had a right to bring a direct attack upon the actions now complained of; they had a right to resist the validity of the appointment of the conservator and any action by him by proper suit in equity to restrain him. But the directors, officers, and stockholders may not stand by and fail to assert their complaint against allegedly invalid laws, and later, when the time comes for assertion of liability, seek to attack collaterally the very things they permitted to proceed without protest.

Defendant alleges that the will of the testator, in order to assure faithful execution of the contract to pay his sister a certain income, provided for the establishment of a trust fund to secure the payment of the annuity and that such trust fund includes the bank stock complained of; that, therefore, the executrix does not hold the stock and the funds in her hands are not liable for the same. However, it appears that the title of the trustee has not vested; that the trustees have never been put in possession of any trust fund; that the administration in the probate court is still pending; that there are unpaid debts. Under the laws of Illinois, the claims of creditors are superior to those of legatees or devisees. Consequently, the title of the trustees is subject to the equities of the creditors and the estate remains with the executrix until the debts have been paid. Creditors have recourse to such funds, and it is that recourse plaintiff is seeking to enforce. Defendant relies upon Jones v. Cronkleton (C.C.A.) 67 F.(2d) 17 and Cronkleton v. Jones (C.C.A.) 67 F.(2d) 21. But in those cases the administration of the estate had been closed and in pur-

suance of the provisions of the trust, the certificates of stock had been surrendered and new ones issued to the trustee. Obviously, thereafter, the liability for the assessment would attach against the trust estate and not to that of the deceased party. The facts clearly distinguish the case from the present one. Here there has been no transfer of the certificates upon the bank's books; there has been no assignment by the executrix; there has been no transfer of title and the estate of the deceased remains unliquidated in the hands of the executrix.

It might have been better practice for the plaintiff to have made as additional parties defendant the trustees under the will, but though they are proper parties, they are not indispensable, for the estate at the present time is under the absolute control of the executrix, and the trustees' interest therein has not passed to them. The title to all assets is, as we have seen, subject to the claims of creditors.

■ Defendant earnestly insists that the plaintiff's cause of action is barred by section 71, chapter 3, Smith-Hurd Ann.St. section 71, chapter 3 of the Revised Statutes of the State of Illinois which bars claims after one year from the date of the probate of the will, except as to subsequently inventoried property and relies upon the case of Forrest v. Jack et al., 294 U.S. 158, 55 S.Ct. 370, 79 L.Ed. 829, 96 A.L.R. 1457, recently decided by the Supreme Court. Decided the same day was Seabury v. Green, 294 U.S. 165, 55 S.Ct. 373, 375, 79 L.Ed. 834, 96 A.L.R. 1463. Upon careful analysis, these cases do not support defendant's contention. The holding in the case of Forrest v. Jack, supra, was to the effect that the estate is not liable for an assessment made after final distribution of the deceased's property and after the cessation of existence of such estate. The court held that the liability for the assessment continues unimpaired until valid assignment of the shares is made by final distribution or by other transfer, and that the liability cannot "be thwarted or impeded by state law." In the latter case the court said: "For the want of capacity the minors are not subject to the assessment. The shares, though in form transferred to their names on the books of the bank, actually continued to be and still are a part of the testator's estate. Early v. Richardson, 280 U.S. 496, 499 [50 S.Ct. 176, 74 L.Ed. 575, 69 A.L.R. 658]. Cf. McNair v. Darragh [C.C.A.] 31 F.(2d) 906. And the estate continued to be liable as a stockholder under 12 U.S.C.A. § 66. The liability was not by the Congress intended to be limited to property actually in the hands of the personal representative when the bank became insolvent or when the comptroller's assessment was made. Section 64 imposes liability upon the stockholder while living. Section 66 lays the same burden upon his estate. The purpose of the latter is to make the estate liable for the comptroller's assessment made after the stockholder's death just as it is liable for decedent's indebtedness arising before he died. * * * As suggested in Forrest v. Jack, supra, the enforcement of liability imposed by section 66 may not be thwarted or impeded by state law."

This is in accord with the public policy of Illinois, for, in Mortimer et al. v. Potter, Receiver, 213 Ill. 178, 72 N.E. 817, even though the liability of the national bank stockholder did not arise until long after the stockholder's death and long after the expiration of the time for filing claims in probate, during all of which period, however, the estate had been administered by a trustee for the benefit of the widow, it was held that the assets of the estate were impressed with the liability. The statute fixing the time for filing claims against the estate is not a general law of limitation, but a specific act for facilitating early settlements of estates. Union Trust Co. v. Shoemaker, 258 Ill. 564, 568, 101 N.E. 1050. The court held there that where a claim against a deceased person has remained contingent during the whole period allowed by law for presenting claims against the estate and does not ripen into absolute liability until the estate has been distributed, the claimant may maintain a bill in equity against such legatees to reach the property of the estate received by them. This decision goes much further than it is necessary to ·go in the present case. In Sanders v. Merchants' State Bank, 349 Ill. 547, 182 N.E. 897, the claim was not exhibited within the year. It was contingent and had not ripened into maturity, and the court held that the suit was properly brought to reach the funds of the estate and that the remedy provided by the federal statute to recover an assessment may be enforced as long as the assets can be reached regardless of the expiration of the statutory period for filing claims. Mortimer v. Potter, 213 Ill. 178, 72 N.E.

817; First Nat. Bank of Hinckley v. Clark, 275 Ill.App. 282; Dairyman's State Bank v. Dunham, 271 Ill.App. 249. The statute of Illinois forbids devisees in fraud of creditors (Smith-Hurd Ann.St. c. 59, §§ 10–12, Cahill's Ill.Rev.St. c. 59, §§ 10–12), and equity affords relief against such action. Durflinger v. Arnold, 329 Ill. 93, 160 N.E. 172, and cases there cited.

■ Defendant contends that the assessment is invalid for the reason that it does not purport to have been made under section 66. The assessment was made April 2, 1934, and recited that "in order to pay the debts it is necessary to enforce the individual liability of the stockholders as described by sections 5151 and 5234 of the Revised Statutes of the United States [12 U.S.C.A. §§ 63, 192]. Section 1, c. 156, Act of June 30, 1876 [12 U.S.C.A. § 191] and section 23, Act approved December 23, 1913 known as the Federal Reserve Act [12 U.S.C.A. § 64]." The order further recites that by virtue of the authority vested in him by law, the Comptroller thereby made an assessment upon the shareholders of the First National Bank of Monticello for $150,000 and demand upon each and every one of them for the par value of each and every share of the capital stock of the association held· by them respectively at the time of its failure. Section 1, c. 156, Act of June 30, 1876 is also title 12 (U.S.C.A. § 191).

Under the law, the Comptroller, when satisfied of the insolvency of an association, may, after due examination, appoint a receiver who shall proceed to close up the association and to enforce the personal liabilities of the shareholders, Title 12 U.S.C.A. § 191. The law further provides that the stockholders of each national bank shall be held individually responsible for all contracts and debts of the association, each to the full amount of his stock. See Title 12 U.S.C.A. §·63. We have noticed the liability prescribed by statute in sections 63 and 66 of title 12.·

It was said in Kennedy v. Gibson, 8 Wall. 498, 505, 19 L.Ed. 476, 478: "It is for the comptroller to decide when it is necessary to institute proceedings against the stockholders to enforce their personal liability, and whether the whole or a part, and if only a part, how much, shall be collected. These questions are referred to his judgment and discretion, and his determination is conclusive. The stockholders cannot controvert it."

Judge Sanborn in Deweese v. Smith (C. C.A.8) 106 F. 438, 445, 66 L.R.A. 971, affirmed 187 U.S. 637, 638, 23 S.Ct. 845, 47 L.Ed. 344, in a case where the defense was based on an allegation that the assessment was to make good losses sustained by the receiver and for which the shareholders were not liable, said: "But this question is not open to litigation in this case. Under the acts of congress and the decisions of the courts to which reference has been made the comptroller of the currency constitutes a quasi judicial tribunal, to whose exclusive determination congress has intrusted the decision. * * * His decisions of questions within his jurisdiction are, like the decisions of the land depart· ment and of other quasi judicial tribunals, impervious to collateral attack, and open to avoidance by the court only in a direct attack upon them on the grounds of clear error of law, fraud, or mistake."

· This suit is properly instituted by the receiver. It is one necessary to close up the affairs of a national bank, jurisdiction of which Congress has expressly put in the federal courts. The Comptroller levied the assessment which stands absolute and effective against any collateral attack. Congress has made the funds of the estate liable for the assessment. The executrix is in possession of the estate. The administration of the estate has not been closed; the statute is directly applicable. Any objection to the legality of the executive proclamation or the Comptroller's orders comes too late and should have been asserted in a direct attack. Consequently, the defenses fail. ·

Plaintiff is entitled to a decree fixing the liability of the estate of Frank V. Dilatush for an assessment for the par value of the shares of stock,·plus interest thereon according to law and impressing all the assets in the hands of the executrix with a lien to secure such liability. The said liability shall be of the same priority as other claims of the sixth class under the statute of Illinois and said lien shall be enforceable to protect the liability upon such basis. It will be the intent of the decree that said lien shall protect the interests of the plaintiff so that plaintiff will share equally with other creditors of the sixth class of the estate. Decree is entered simultaneously herewith.

The foregoing is adopted by me as my findings of fact and conclusions of law in

126

conformity with Equity Rule 70½ of the Supreme Court (28 U.S.C.A. following section 723).